## STATE v. W. C. GORHAM.

*License Tax—Lightning-rod Agent—Interstate Commerce.*

1. The right of a State to tax trades, professions and avocations within the borders of the State is unquestionable, though the goods dealt in be manufactured in another State.

STATE v. GORHAM.

2. Where, in the trial of a person indicted for failure to take out the license provided for by Sec. 27, ch. 294, Acts of 1893, it appeared that he was the agent, for the sale and delivery in this State, of manufacturers of lightning-rods in another State, and that such sale and delivery included the putting up of said rods whenever the purchaser so requested, for which no extra charge was made, and that the rods were shipped in bulk to the agent, who broke the package for distribution to his customers: *Held* (1), That the defendant was an itinerant, putting up lightning-rods under the meaning of section 27, chapter 294, Acts of 1893; (2) that the connection between the pursuit of such avocation and the sale of articles manufactured in another State was so remote in its effect as to impose no burden upon the business of interstate commerce; and (3) that the manner of sale and delivery of the lightning-rods was such as to divest it of any feature of interstate commerce, the original packages being necessarily broken before the sale was completed by delivery to the purchasers.

Appeal from a Justice's judgment, tried at Spring Term, 1894, of WILSON Superior Court, before *Bynum, J.,* upon the following warrant and special verdict :

*Warrant.*—" J. W. Crowell, being duly sworn, complains and says, that at and in said county, and in Wilson township, on or about the 1st day of September, 1893, W. C. Gorham did unlawfully and wilfully put up lightning-rods on the house of James E. Rountree without having paid the tax imposed by section 27, Revenue Act of 1893, against the form of the statute in such case made and provided, and contrary to law and against the peace and dignity of the State."

*Special Verdict.*—" Cole Brothers were, on and prior to October 1, 1891, and up to the 4th day of June, 1894, and still are, citizens and residents of the town of Greencastle, in the State of Indiana. They were on said 1st day of October, 1891, and now are, manufacturers of and dealers in lightning-rods, fixtures, ornaments, etc., and prosecuted said business in the several States through their agents, selling and delivering lightning-rods and fixtures by attaching the same

STATE *v.* GORHAM.

to dwellings and other houses and buildings of their customers.

"In the department of selling and delivering they employ soliciting agents in the several States, who travel on railroads and in buggies from place to place and house to house for the purpose of soliciting and taking orders for lightning-rods by samples thereof, and catalogues illustrating the same. That when orders are received from persons desiring to purchase rods, the same are delivered or forwarded by such soliciting agent to the said Cole Brothers, and the same are filled by the shipment of rods so ordered to some convenient and accessible point from which they are delivered to the person ordering the same. The said Cole Brothers have no place of business in North Carolina. The said Cole Brothers on the 1st day of October, 1891, for the purpose of introducing their goods into the State of North Carolina, entered into a contract with the defendant W. C. Gorham, whereby they appointed him their agent and manager to conduct for them in said State the business of selling by sample, and delivering lightning-rods so manufactured by them. That such sale and delivery, included the putting up of said rods, whenever the purchaser so requested, for which no extra charge was to be made. That the said defendant W. C. Gorham, was authorized to and did employ salesmen and others to assist him in the prosecution of said business. That all orders taken by the defendant W. C. Gorham for lightning-rods and fixtures were in the form of Exhibit " A," hereto attached. That on the __ day of ____, 1893, the said W. C. Gorham, acting as the agent of Cole Brothers, at and in the Town of Wilson, county aforesaid, took from Jas. E. Rountree an order, in accordance with a sample, for rods to be attached to his dwelling-house in said town, in the form and language of Exhibit " A " hereto attached. That said order, together with other orders of like character, taken from other persons, was forwarded by the

said defendant to said Cole Brothers, at their said place of business in the State of Indiana, and the same was filled by shipment of the rods so ordered. That the said rods were received by the said W. C. Gorham, and by him, through his servants and employees, attached to the dwelling-house of the said Jas. E. Rountree, in accordance with the terms of said order. That the shipment of said rods was made at the same time, and as a part of a shipment of other rods to fill other orders so taken by the said defendant, and forwarded to the said Cole Brothers.

"That the defendant had not at the time of taking said order and delivering said rods paid the tax in Wilson County, imposed by section 27, chapter 294, Acts of 1893, and had not at the time of the issuing of the warrant herein paid said tax."

The order for lightning-rods (Exhibit "A"), was as follows:

" MESSRS. COLE BROS.

" *Sirs :* Erect or deliver, at your earliest convenience, your improved Lock-screw Lightning Rods, manufactured by your Franklin Lightning-Rod Co., at or on my ____, in the county of ____, State of ____, viz., ____ points, ____ ground rods, in accordance with the scientific rules, as printed on the back of this order, and I agree to settle for the same by cash, or note due ____, at 47½ cents per foot for the rod, and the price of five feet of rod for each brace, $3.50 for each point, $2.50 for each ball, and $4 for each arrow; no extra charge for putting up rods.

" If this order is revoked by me, or, if through any fault or refusal on my part the rods are not erected, I agree to pay, as liquidated damages therefor, a sum equal to one-half of the cost of material necessary for the work, at prices quoted in the order.

" It is expressly understood by the signer of this order, that he signs the same on his own judgment, after due

deliberation by him, without any undue influence having been used, or relying on any representation made by any agent or person, other than what is written or printed on this blank.

"Given the __ day of ____, 189__"

_____

"If, upon the foregoing facts, the Court shall be of opinion that the defendant is guilty, the jury say that he is guilty; otherwise, they say the defendant is not guilty."

The Court being of opinion that the defendant is not guilty, the jury so find; and it was adjudged that the defendant be discharged.

The Solicitor for the State appealed.

*The Attorney General* and *W. J. Peele*, for the State (appellant).

*Perrin Busbee* and *H. G. Connor*, for defendant.

MACRAE, J.: Section 27 of chapter 294 of the Acts of 1893, being a part of Schedule B, the taxes in which are imposed as license taxes for the privilege of carrying on business or doing the act named, is as follows: "On every itinerant who puts up lightning-rods, $50 annually, for each county in which he carries on business." There is nothing in the words of the statute to indicate a purpose to levy a tax in any form upon, or to impose a restriction in any manner, upon citizens or inhabitants of other States from engaging in business connected with the commerce between the States, which is protected from State legislation by the Constitution of the United States. The right of a State Legislature to tax trades, professions and avocations within the borders of the State has never been disputed.

It is earnestly contended, however, by the learned counsel, that the defendant was not an itinerant engaged in putting up lightning-rods, but that his business was that of selling,

in which, of course, is included the delivery, an article manufactured in another State. That it appears by the special verdict that such sale and delivery included the putting up of said rods, whenever the purchaser so requested, and for which service no extra charge was to be made; and, therefore, that the imposition of a license tax upon defendant for putting up the rods sold by him "is an attempt to impose a tax on the business of carrying on interstate commerce." We are not disposed to question the principle so often laid down by the Supreme Court of the United States from *Brown* v. *Maryland*, 12 Wheat., 419, to *Brennan* v. *Titusville*, 14 S. C. Rep., 829, that no State has a right to lay a tax on interstate commerce in any form; neither have we any disposition to extend the application of this doctrine any further than we find it.

Unless there is something in this special verdict which so connects the act of defendant in putting up the lightning-rods sold by him with the business of interstate commerce, it will be our duty to uphold the law of this State, and apply it to the case before us.

The whole matter is in a nutshell. After finding the fact that Cole Bros. were manufacturers in another State, and defendant was their agent in this State for the sale of their wares, it further finds "that such sale and delivery included the putting up of said rods, whenever the purchaser so requested, for which no extra charge was to be made." Under these circumstances, is the defendant liable for the license tax?

It will be seen that quantities of the goods were shipped to the agent, at some convenient point in this State, in original packages, and were after bulk broken distributed and delivered by him to the different purchasers. That the sale was not completed by delivery until after such breaking of bulk in this State, and that the quantity of the article was not determined in the order, as will appear by reference to "Exhibit A," and was to be determined after the importation of the original package. The consideration of these facts

leads us to the conclusion that the present case may easily be distinguished from any of the numerous adjudications on the subject. In Brennan's case, *supra,* the pictures were delivered, framed, direct to the purchaser. Of necessity, the goods, if many of them had been shipped to the agent for delivery, were separate and distinct from all other goods of the same character.

It was not obnoxious to the Interstate Commerce clause of the Constitution when a license tax was laid "on all peddlers of sewing-machines without regard to the place of growth or produce of material or of manufacture," because the test is "whether there is any discrimination in-favor of the State which enacted the law." *Machine Co.* v. *Gage,* 100 U. S. Rep., 676. "When goods are sent from one State to another for sale, or, in consequence of a sale, they become part of its general property and amenable to its laws, provided that no discrimination be made against them *as goods* from another State, and that they be not taxed by reason of being brought from another State, but only taxed in the usual way as other goods are." *Robbins* v. *Shelby,* 120 U. S. Rep., 489, citing *Machine Co.* v. *Gage, supra,* and *Brown* v. *Houston,* 114 U. S. Rep., 622.

If this license tax upon itinerants putting up lightning-rods could in the slightest degree affect the sale and delivery of the article, its effect upon the interstate commerce would be so incidental and remote as not to amount to a regulation of such commerce, as in *Fickler* v. *Shelby,* 145 U. S., 1. Again, as said in *McCall* v. *Cal.,* 136 U. S., 104, where an agent of a railroad running from another State was soliciting business, but not selling tickets in California, "The test is, was the business a part of the commerce of the road? Did it assist or was it carried on with the purpose to assist in increasing the amount of passenger traffic on the road?"

In our case the business which could not be taxed was the sale of, or the solicitation of persons to purchase the lightning-rods manufactured in another State. The avocation

requiring a license is that of an itinerant putting up lightning-rods. The sale and delivery of the article is not inseparable from the erection of it, any more than the shoeing of horses is from their importation into the State, or the shipping here of wheat is from its sowing in the fields. Indeed it appears by the contract that the agent was only to put up the rods when requested so to do by the purchaser, the inference is that the purchaser might choose to employ some one else to put them up, and that a sufficient margin is allowed upon the price to fully pay the expenses of erection and make it to the interest of the purchaser to require the seller to put it up. One who goes through the country putting up rods is none the less liable to be taxed for the privilege of exercising his avocation because he adds to this business that of soliciting the purchase of the articles to be so put up by him. If such is the law it will not be difficult for persons whose avocations are taxed to engraft upon their business a branch for the sale of some article of foreign manufacture which is a necessary part of the business in which they are engaged. We may distinguish the manner of delivery of the articles named in Spain's case, 47 Fed. Rep., 208, if we were bound by the opinion delivered in that case. Certain specified articles, lamps, lamp-shades, etc., maufactured in West Virginia, were sold by the agent traveling in North Carolina for his principal. Many of the articles ordered were shipped in the same box to the agent who took out the separate articles and completed the sale by delivery of the same to the purchasers But here, a sufficient quantity of the lightning-rod material is shipped to the agent, from which to fill orders theretofore taken ; he selects from the bulk enough to fill the order of his customer and delivers it. The bulk was broken and the same became a part of the general property in the State before delivery when the package was opened, and a part thereof until then undistinguishable from the balance was set apart to be delivered to a particular purchaser.

The latest, as far as we have been able to ascertain, of the very numerous deliverances of the highest Court of this country upon the subject we have under consideration, is that of *Brennan* v. *Titusville, supra.* The defendant was the agent of the manufacturer of picture-frames and maker of portraits, residing in Illinois. The defendants' business was to travel in Pennsylvania, and to solicit orders for said pictures and frames; the orders were forwarded by the defendant to his principal in Chicago, who shipped the goods direct, by express or freight, to the purchaser; the price of the goods was sometimes paid to the express company and sometimes to the agent. An ordinance of the City of Titusville had attempted to lay a license tax upon " all persons canvassing or soliciting within said city, orders for goods, books, paintings, wares or merchandise of any kind, or persons delivering such articles under orders so obtained or solicited."

This was so clearly within the rulings in the cases of Robbins and Asher, that it scarcely required an elaborate opinion; its simple statement will show the particulars in which it differs from ours.

We conclude then, that his Honor was in error in holding that the defendant was not guilty upon the special verdict, because—

1. The defendant was an itinerant putting up lightning-rods.

2. The connection between the pursuit of this avocation and the sale of articles manufactured in another State was so remote in its effect as to impose no burden upon the business of interstate commerce.

3. The manner of sale and delivery of the lightning-rods was such as to divest it of any feature of interstate commerce, the original packages being necessarily broken before the sale was completed by delivery.

There is error, and the judgment is reversed.

Judgment Reversed.