## WROUGHT IRON RANGE COMPANY v. J. A. CARVER, et al.

*Constitution of State and United States—License Tax—Peddlers—Ratification of Statutes—Signatures of Presiding Officers — Inter-State Commerce — Instruments Referred to in a Statute.*

1. Under Sec. 76, Ch. 119, Laws 1895 (the Machinery Act) the collection of an illegal and invalid tax may be enjoined.

2. *Semble,* that the exception in the above-mentioned section is as broad as the prohibition; and about all the effect the section has is to give an additional remedy to test the validity of a tax, leaving it to the discretion of the tax-payer to pay the tax and sue to recover it back, or to proceed by injunction.

3. The Legislature had the power to levy the tax on peddlers provided in Sec. 28, Ch. 116, Laws 1895, and to provide the method of collection and enforcement set forth in the Machinery Act of 1895.

4. Foreign corporations can only do business in this State by virtue of the rules of comity, under which rules they cannot be accorded greater privileges than citizens of the State.

5. A foreign corporation is not a citizen of the state creating it within the protection of Art. IV., Section 2 (1), of the Constitution of the United States.

6. The tax imposed on peddlers by the Revenue Act of 1895, as it makes no discrimination in favor of citizens of this state, is valid, and not in violation of the Federal protection of Inter-State Commerce guaranteed by the Constitution of the United States.

7. *Semble*, that an Act of the Legislature of this State is valid, if regularly passed in other respects, although its ratification is not attested by the signatures of the presiding officers, upon the same principle that judgments of the courts are valid although not signed by the presiding judge. *Scarborough* v. *Robinson*, 81 N. C., 409, criticised and distinguished.

8. When one deed, contract, pleading or other written instrument refers to another written instrument for important or essential particulars, the instrument thus referred to becomes a part of that referring to it: and upon the same principle where an act of the Legislature, in all respects regular as to its passage and ratification, refers to another act about the proper ratification of which there is a serious question, the act thus referred to becomes incorporated in the act in which it is thus referred to, and becomes a valid law as part thereof.

9. *Quere*, if the counties have power to levy a peddler's tax under Ch. 116, Sec. 28, Laws 1895.

This was a CIVIL ACTION, heard by his Honor, *Henry R. Starbuck*, *at Chambers*, in Greensboro, the 13th day of July, 1895, upon an affidavit of the plaintiff to continue the restraining order, theretofore granted, by *Robinson, Judge*, until the final hearing.

Upon an affidavit made by the plaintiff, his Honor, *W. S. O'B. Robinson*, granted an order restraining and enjoin-

ing the defendants from the acts complained of in the affidavit of the plaintiff, and ordered the defendant to show cause before his Honor, *Henry R. Starbuck*, at Greensboro, on the 6th day of July, 1895, why the same should not be continued until the final hearing.   By agreement of parties the time of hearing was continued until July 19th, at which time his Honor heard the case, and on July 22, 1895, rendered the following judgment :

This cause coming on to be heard upon a motion to continue the restraining order, heretofore granted by *Robinson, Judge*, to the final hearing of the action, the hearing of said motion having been continued to this date :

Upon consideration of the complaint and affidavits filed, the motion to continue said restraining order is denied and the same is hereby dissolved.   And it is further adjudged that the defendant recover of the plaintiff the costs of the injunction proceeding to be taxed by the clerk.

Plaintiff appealed.

*Messrs. Shepherd & Busbee, Boone, Merritt & Bryant*, for plaintiff (appellant).

*Messrs. W. A. Guthrie* and *A. L. Brooks*, for defendant.

FURCHES, J. :   This is an application for an injunction to restrain the defendant, as sheriff of Person county, from collecting by distraint, what he claims to be a peddler's tax.   The defendant denies plaintiff's right to proceed by injunction, whether the tax be " illegal and void " or not, under Section 76, Machinery Act of 1895.   We do not agree with defendant in this contention.

It was agreed that plaintiff might proceed by injunction unless he is prevented by this Section, and it is true that this section does not profess to prohibit the issuance of injunctions against the collection of public taxes, except in certain cases, and it seems to us that the exception is

RANGE COMPANY *v.* CARVER.

about as broad as the prohibition, and about all the effect it has is to give an additional remedy, which is left to the discretion of the party to pay the tax and then bring an action to recover the money back.    But whether the exception is as broad as it seems to us or not, it in express terms excepts from the inhibition of injunction taxes that are " illegal or invalid," and that is what the plaintiff alleges in this case—that they are " illegal and invalid," and this question of jurisdiction, being disposed of, the matter comes to be considered upon its merits.

There are many grounds of objection made by the plaintiff to the legality of this tax, and to the manner in which the defendant proceeded to collect the same     Plaintiff says that no such tax has been *assessed*, and the defendant had no warrant or order for its collection ; that, if defendant had authority to collect without a special order to do so, his action was illegal, as the tax created no lien on plaintiff's property and he had no right to take it by distraint or levy.    But plaintiff further alleges that, if defendant, as a tax-collector, has the right to levy property for taxes without a special order to do so, he had no right to do so for this tax, as it was protected from taxation by the law of Inter-State Commerce, and was unconstitutional and void.    And finally plaintiff alleges that Chapter 116, Acts of 1895, was not signed by the President of the Senate and the Speaker of the House of Representatives, and therefore is not a part of the laws of North Carolina. " Taxes are the enforced proportional contributions from persons and property levied by the state, by virtue of its sovereignty, for the support of government, and for all public needs."    Cooley on Taxation. Sec. 83 (8), Ch. 119, Acts 1895, defines " tax," " taxes," to be any tax or assessment, provided for in this act.    " The power of taxation is an incident of sovereignty, and is possessed by the gov-

ernment without being expressly conferred by the people."
(Constitution.)   Cooley on Taxation, 4.

"In general it will be found that the statutes imposing
taxes make special provision for their collection and do
not apparently contemplate that any others will be neces-
sary."   Cooley, *supra*, 15.

Section 37, Ch. 119, Acts 1895, provides for the collec-
tion of taxes as follows : " Whenever the tax shall be due
and unpaid, the sheriff shall immediately proceed to collect
the same as follows : If the party charged have personal
property equal to the value of the tax charged against
him, the sheriff shall seize and sell the same, as he is
required to sell other property under execution." ' And an
act for levying taxes and providing the means of enforce-
ment is, as we have seen, within the unquestioned and
unquestionable power of the Legislature.   It is therefore
the law of the land, not only in so far as it lays down a
general rule to be observed, but in all the proceedings, and
all the process which it points out or provides for in order
to give the rule full operation.   As has been well said,
" the mode of levying as well as the right of imposing
taxes is completely and exclusively with the legislative
power."   Cooley, *supra*, 48 and 49.   The work of the
commissioners in assessing taxes is only to ascertain the
amount due where this is uncertain and to be determined
by some general rule prescribed by the Legislature.   But
besides the above authorities the right of the sheriff to
levy and sell for just such taxes as are involved in this
action has been expressly decided and sustained by this
Court in *Cowles* v. *Brittain*, 2 Hawks., 207, and *Wynn* v.
*Wright*, 1 D. & B., 19, and these cases are cited and
approved by Justice GRAY in delivering the opinion of the
Court in *Emert* v. *Mo.*, 156 U. S. R., 309.

So it is clear the Legislature had the right—the power—

to levy this tax, (leaving out for the present the question of Inter-State Commerce,) that it did levy it, and that it had the right to provide (prescribe) the mode and manner of enforcing its collection and by whom it should be collected ; and it did prescribe the mode of enforcing its collection and by whom it should be collected. And under this legislative power the defendant—the sheriff—has proceeded to make the collection in the manner pointed out in the act.

This leaves two questions to be considered, Inter-State Commerce and as to whether Chapter 116, Acts of 1895, is a part of the Public Laws of the state.

It is contended by plaintiff that the first of these questions (Inter-State Commerce) has been expressly decided by this Court in plaintiff's favor, and *State* v. *Lee*, 113 N. C., 681, and *State* v. *Gibbs, Ib.*, 700, are cited as authority to sustain this contention. But upon examination it will be found that *State* v. *Lee* was expressly put on the ground that the Legislature had not imposed a tax on defendant's business, and the Court intimates the opinion that had the legislature imposed the tax the Court would have affirmed the judgment below. The question of Inter-State Commerce is not discussed in the opinion, but if it was considered the intimation of the Court is against the plaintiff's contention. The case of *State* v. *Gibbs* is put upon an admission of the Attorney General that it falls under the decision of *State* v. *Lee*, and it is expressly stated in the opinion that no Federal question is presented. So, it is manifest that neither of these cases decides the question or sustains the contention of plaintiff as to Inter-State Commerce.

The case of *State* v. *Lee, supra*, as was that of *State* v. *Gibbs*, was put upon the definition of "peddler." And the Court then held that the term peddler did not include

a party who traveled over the country carrying a sample stove, soliciting orders to be filled by another wagon following and delivering stoves. This was at least a very favorable construction for the defendant.

This is a privilege tax and outside of the revenue to be raised for the support of the Government. The object of such taxes is to protect the people against the frauds and machinations of this class of irresponsible traders, and to protect honest dealers with fixed places of business, and who honestly bear their part of the burden of the Government. *Emert* v. *Missouri, supra.* And this being so, it is apparent that neither the people nor the *bona fide* local dealers would receive any more protection against this itinerant trade, carried on in the manner pursued by plaintiff, than if he were to sell the stove he has in the wagon in which he travels. In fact it can be considered in no other light than as a subterfuge—a trick—to evade the tax imposed by the Government. This question of taxation is elaborately discussed by Justice GRAY in *Emert* v. *Missouri, supra*, and especially on page 314, where he defines the term peddler. In Tomlin's Law Dictionary these definitions are given : " Hawkers, those deceitful fellows who went from place to place buying and selling * * * and the appellation seems to grow from their uncertain wandering, like persons that with hawks seek their game where they can find it "—" Hawkers, peddlers and petty shopmen— persons traveling from town to town with goods and merchandising." But it is not necessary for us to decide in this case whether the definition given to the word " peddler " in *State* v. *Lee* was correct or not, as the Act of 1895, Ch. 116, Section 23, has made the definition, " That any person carrying a wagon, cart or buggy for the purpose of *exhibiting or delivering* any wares or merchandise shall be considered a peddler. This paragraph was not

in the Acts under which *State* v. *Lee* and *State* v. *Gibbs* were decided. The Legislature had the right to make this definition. *Emert* v. *Missouri, supra.* So there can be no doubt that plaintiff's business was taxed by the Act of 1895.

Then is the plaintiff relieved from the burden of this tax by the Constitution of the United States under the doctrine of Inter-State Commerce? We do not think it is. The plaintiff is a foreign corporation and can only do business in this State by the rules of comity, and it would seem that under this doctrine it ought not to claim, and if it does claim it should not be allowed, greater privileges than our own citizens. A foreign corporation is not *a citizen* of another state, and can claim no privilege or protection under Article IV., Sec. 2 (1) of the Constitution of the United States. *Paul* v. *Virginia*, 8 Wall., 168 ; *McCreedy* v. *Va.*, 94 U. S., 391 ; *U. S.* v. *Crookshank*, 92 U. S., 542. But as they are allowed to come here under the doctrine of comity, they are entitled to the same protection and are subject to the same burdens on their business as are imposed on the business of our own citizens, and no more. It is admitted that a tax imposed on peddlers is a tax on the property authorized to be sold. *Machine Co.* v. *Gage*, 100 U. S., 678. But a State may impose the same license tax on peddlers from other states that it imposes on its own citizens. *Machine Co.* v. *Gage, supra ; Ward* v. *Maryland*, 12 Wall., 163 and 418. If it discriminates in favor of its own citizens and against the citizen of another state, this will be in violation of the Constitution and void. *Machine Co.* v. *Gage, supra.* The non-exercise by Congress of the power to regulate Inter-State Commerce is equivalent to a declaration that it shall be free from any restrictions. *Welton* v. *Missouri*, 91 U. S., 275 ; *Machine Co.* v. *Gage, supra.* The case of *Machine Co.* v. *Gage*

was almost our case. If there is any distinction in the principle there decided and the case now before us, we have been unable to discover it after a careful examination. That was an action brought by the Howe Sewing Machine Company, a Connecticut corporation which had shipped its machines to Nashville, Tenn., and from there an agent went to Sumner county to peddle and sell these machines. A license tax similar to ours was demanded of him. He denied the right to demand this tax, but paid it under a provision of the Tennessee statute similar to the provision in Section 76 of our law, and the Machine Company brought an action to recover back this tax. The plaintiff in that case, as the plaintiff does in this case, contended that the tax was unconstitutional and void upon the ground of its being an interference with Inter-State Commerce. But the Court, after a full review of all the authorities on the subject, held that as the same rule applied to all alike, there being no discrimination against the plaintiff and in favor of the citizens of Tennessee, there was no constitutional objection to it, and that plaintiff could not recover. The same question was again before the Court and the whole subject discussed at great length by Justice GRAY, in which the case of *Machine Co.* v. *Gage* was discussed and approved, as late as the 156 U. S., in *Emert* v. *Mo.*, *supra*. Upon these authorities we have no hesitation in holding that plaintiff is not protected from paying this tax by any provision of the Constitution of the United States.

This leaves one other question to be considered: is Chapter 116, published as a part of the Public Laws of 1895, a part of the law of North Carolina, or is it, as plaintiff contends, a nullity? This is an important question.

If we sustain the contention of plaintiff, it does not only relieve him from the payment of this tax, which we

have seen he is otherwise liable for, but it also relieves all other tax-payers from the payment of their taxes imposed under its provisions. We say under its provisions, because if it is not the law, it is contended that the Revenue Act of 1893 (which is very similar to this) would be left in force. But that is not a matter now before us. The question before us is, whether Chapter 116 of the Acts of 1895 is the law ?

There is no question in this case but that it was passed by both Houses of the General Assembly according to the provisions and requirements of the Constitution. There is no question but that it was deposited in the office of the Secretary of State as one of the Public Laws passed by the General Assembly of 1895. There is no question but that the Secretary of State received it and enrolled it as one of the Public Laws passed at that session of the General Assembly. There is no doubt but that the Secretary of State certified that it was one of the Public Laws on file in his office, and that the Public Printer published it with other Public Acts of the General Assembly of 1895, as a part of the Public Laws of the state. This made it, presumptively at least, a part of the Public Laws of the state, and every person, having occasion to do so, has the right to read it in evidence in any court of the state as the law. *Code*, Section 1339.

It was held in *Carr v. Coke*, 116 N. C., 223, that an act purporting to have been passed by the General Assembly, and signed by the President of the Senate and the Speaker of the House, was a record importing verity, and could not be impeached collaterally. It is true, if it be admitted that this act was not signed by the presiding officers (which we admit for the present for the argument only) the question is then presented as to whether it is a record or not. Plaintiff contends that it is not, for the reason

118—22

that the Constitution provides, and as plaintiff says, requires it to be signed by the President of the Senate and the Speaker of the House. The Legislature and its presiding officers are bound by the requirements of the Constitution. And it is certainly true that every one ought to observe the provisions of the Constitution. If the Legislature passes any law which is in plain violation of the provisions of the Constitution, it is the duty of the courts to declare it void. But that is not the case here. It is not alleged that this act is in conflict with any of the provisions of the Constitution. It is not alleged that the Legislature has done any act in violation of the Constitution ; but that the presiding officers, through an inadvertence, have failed to sign an act, and therefore it is not the law. It would seem that a judge in the discharge of his duty would be as much bound to observe the plain requirement of the statute law of the state as the presiding officers of the General Assembly are to observe the Constitution in discharging their official duties. Yet we have a plain provision in our statute law requiring every judgment granted by a judge to be signed by him. *Code*, Section 288. And this Court has held that this statute, apparently mandatory, should always be observed ; still it is held to be only directory, and a judgment passed in open court, and filed with the papers, as a part of the judgment roll, is a valid judgment, though not signed by the judge. *Matthews* v. *Joyce*, 85 N. C., 258 ; *Rollins* v. *Henry*, 78 N. C., 342 ; *Keener* v. *Goodson*, 89 N. C., 273 ; *Spencer* v. *Credle*, 102 N. C., 68 ; *Bond* v. *Wool*, 113 N. C., 20.

Then suppose it be admitted that Mr. Coke's affidavit is competent (which is not admitted) and that it proves that this act was not signed by the presiding officers ; does it prove more than if the clerk's affidavit was allowed to prove that a judgment on file in his office had no signa-

ture of the judge, or of any judge, attached to it? ·What would be the reply? *Non constat*, the judgment having been passed by the court when in session and filed as a judgment, it is the judgment of the court. Critically speaking, Mr. Coke's affidavit does not prove that this act was not signed by the presiding officers; and probably it is our duty in a matter of this importance to place a strict construction upon this affidavit. Then what is the affidavit? "That said act contains no clause of ratification and no signatures of the presiding officers of the Senate and House of Representatives, or either of them, appear thereon or are appended thereto." 'And it is contended by the defendant that, if it be admitted that the names of these officers are not now attached to this act, it does not necessarily follow that they never were. Especially, when the affiant had certified to its being the law, in the following certificate: "May 23, 1895. I, Octavius Coke, Secretary of State, hereby certify that the foregoing (manuscript) are true copies of the original acts and resolutions on file in this office. Octavius Coke, Secretary of State." It is admitted that Chapter 116 is one of the "acts" he certifies is on file in his office.

But it is further contended by the defendant that as this is a matter of *record* it cannot be disproved by oral testimony, and that the only way this could be done, if at all, would be by a certified copy under seal from the Secretary of State.

It is admitted that, if it is shown that the presiding officers of the General Assembly did not sign this act, the argument in the opinion of the Court in *Scarborough v. Robinson*, 81 N. C., 409, is some authority for the contention of the plaintiff that it is not a law. But no such question was presented in *Scarborough v. Robinson* as is presented in this case. In that case the allegation of the

plaintiff was that the bill had not been signed and the action was for a mandamus to compel the presiding officers to sign the bills, after the Legislature had adjourned. This was the only question presented in that case. But the court in the course of the opinion said that an act passed and not signed by the presiding officers was not the law. That part of the opinion does not seem to be in harmony with cases above cited in which the judgments of the superior court have been sustained though not signed by the judge as required by the statute. Besides, this part of the opinion in *Scarborough* v. *Robinson* was criticized by the court in the opinion delivered in *Cook* v. *Meares,* 116 N. C., 582, and pronounced an *obiter,* both in the opinion of the Court and in the concurring opinion filed by Justice AVERY.

But, if this was not so, this case has gone much further than *Scarborough* v. *Robinson.* In that case the act had not been certified and published as a part of the laws of the state as this act has been. In *Carr* v. *Coke, supra,* it was stated that the object of that action was to enjoin its being certified and published, and stress was put upon the fact that it had not yet been certified and published ; as, if this were done—that is, certified and published as a part of the Public Laws—it would much strengthen if not perfect the act.

But, as there is some difference of opinion among the members of the Court as to the positions above stated as to the validity of this act, there is another view upon which all agree that it is valid, and this we will now discuss and it will be considered as the basis of the judgment of the Court.

Where one deed refers to another deed for information not set out in the last deed or as a basis for what is contained in the last deed, the first deed becomes a part of the

last.  *Brasfield* v. *Powell*, 117 N. C., 140.  Where two instruments are cotemporaneous and about the same subject matter, they are to be taken together and construed as a whole.  *Flaum* v. *Wallace*, 103 N. C., 296.  Where one files a complaint in an action and refers to another action then pending, without stating the contents of the action referred to except that it is about the same subject, the complaint thus referred to is made a part of the complaint in the second action.  *Alexander* v. *Norwood*, at this Term.

In 1865 the Legislature of Kansas, in aid of the Union Pacific Railroad, passed an act which was filed in the office of the Secretary of State and by him certified to the public, printed and published as one of the laws of the state.  In 1866, and probably in 1867, the Legislature passed other acts which referred to the Act of 1865 as being a part of the laws of the state of Kansas.  Some time after this, one Higginsbotham brought an action to compel the issuance of the bonds provided for in the Act of 1865, when his action was contested upon the ground that the President of the Senate, by some inadvertence, had failed to sign the act, which was an admitted fact—the Constitution of Kansas like ours requiring that all acts should be signed by both the Speaker of the House and the President of the Senate before they should become laws.  But the Court, in a long and well-considered opinion, held that, as this Act of 1865 had been referred to as the law in 1866 and 1867, by other acts that were properly signed, that was a sufficient ratification by the Legislature to supply the want of the signature of the President of the Senate to the Act of 1865.  *Commissioners* v. *Higginsbotham*, 17 Kansas, 62.

It must be admitted that a failure of one of the presiding officers to sign the bill (the signature of both being

required) was as defective as if neither had signed, and the Kansas case cannot be distinguished in principle from ours on that account.

In our case, Chapter 119, which is the accompaniment of Chapter 116, being an act for the collection of the taxes levied in Chapter 116, expressly refers to Chapter 116, in Sections 33, 102 and 116, and requires the Secretary of State to have five thousand copies of the " Act to Raise Revenue" (Ch. 116) to be printed and to " distribute the same among the officers of the state, whose duties it is to execute and carry the same into effect." Upon the authorities cited as well as " the reason of the thing," we are of the opinion that it was a sufficient ratification and attestation of Chapter 116, Acts 1895, entitled " An Act to Raise Revenue," to constitute it a part of the Public Laws of North Carolina. But the tax levied in Section 28 is state tax, and we fail to see that the County of Person has levied any tax on the plaintiff, if it has any authority to do so. Therefore, the order appealed from is sustained as to the state's tax and reversed as to the county tax. Let this be certified.

Modified and Affirmed.