### COLLIER v. BURGIN.

#### (Filed June 10, 1902.)

1. PEDDLERS—*Licenses—Taxation—Acts 1901, Chap. 9, Sec. 54.*

Under Acts 1901, Chap. 9, Sec. 54, a publishing company selling and delivering books through agents in sets, the title of books remaining in seller until paid for, is liable to license tax on peddlers.

2. PEDDLERS—*Licenses—Taxation—Acts 1901, Chap. 9, Sec. 54— Interstate Commerce—U. S. Constitution, Art. I, Sec. 8—Commerce.*

The taxation of persons who sell books through agents and ship them to their agents to be delivered to the buyers, is not in violation of Art. I, Sec. 8, of the Constitution of the United States as to interstate commerce.

ACTION by P. F. Collier & Son against Wm. McD. Burgin, Sheriff, heard by Judge *W. B. Councill,* at February Term, 1902, of the Superior Court of McDOWELL County. From a judgment for the defendant, the plaintiff appealed.

*J. C. L. Bird,* for the plaintiffs.
*Robt. D. Gilmer,* Attorney-General, for the defendant.

FURCHES, C. J.   The plaintiff is a book publishing company, residing and doing business in the State of New York. The plaintiff employed agents in this State to sell and distribute its books, and such agents were engaged in selling and distributing said books in the county of McDowell in this State.   The defendant is the Sheriff of McDowell County, and, as such, it was and is his duty to collect the State and county taxes; and the defendant being advised that the plaintiff was liable for a tax for so selling its books, made a demand upon the plaintiffs' agent for such tax, which the plaintiffs refused to pay, believing it was not liable to any tax on account

of said sales.  Thereupon the defendant as Sheriff levied upon and took possession of a lot of plaintiffs' books which he vas proceeding to sell for said taxes, when this proceeding was commenced, as a controversy without action, under Section 567 of The Code, and the following facts were agreed upon by the parties:

1. The plaintiffs are residents and citizens of the city of New York, in the State of New York, engaged in the publication and sale of books.

2. That the books published by the plaintiffs are, for the most part, published in sets consisting of a number of volumes in each set; for example, the works of Bulwer, Hawthorne, Scott, Shakespeare, Balsac, etc., are published in sets, or in a number of volumes containing the works of each author.

3. That the sets of books so published, when bound, are each packed in a separate box, or package, and are not opened until delivered to the purchaser.

4. That the books published by plaintiffs in the said city of New York are sold by agents, or canvassers, of the plaintiffs by sample or prospectus to purchasers throughout the State of North Carolina and the United States upon the installment plan, viz:   A specified sum in cash, to be paid upon delivery of the books, and a specified sum to be paid each month until the entire purchase-price is fully paid, the plaintiffs, P. F. Collier & Son, retaining the title to the books until they are paid-for—the agent, or canvasser who makes the sale, takes an order from the purchaser for the books, and the order is forwarded by the agent, or canvasser, to the central office in New York City, or some branch office of the plaintiffs.   All orders taken in North Carolina are sent to the branch office of the plaintiffs at Louisville, State of Kentucky, which office is run in the name of P .F. Collier & Son.

5. That for the convenience of shipments the books are sent in original package, and in car-load lots, from the factory in

New York to the branch offices, and are then shipped from the branch office, in original package, to the agent of the plaintiffs, whose business it is to deliver the books and collect the money for them from the several purchasers.

6. That during the month of April, 1901, one King, an agent and canvasser of the plaintiffs, sold books to various parties in Marion, North Carolina, and forwarded the orders for the same to the branch office of the plaintiffs at Louisville, in the State of Kentucky; that the plaintiffs shipped the books in original packages from their ware-rooms in said city of Louisville, for which orders had been received from their agent, King, to their delivering and collecting agent, Watson, at Marion, North Carolina.

7. That plaintiffs' agent, Watson, delivered the books to the several persons who had give the canvasser, King, orders, and collected the amount which was to be paid on delivery of the said books; that said books were delivered in original packages, as shipped from the factory and not opened until delivered to the purchaser.

8. That plaintiffs' collecting agent, Watson, has continued to collect from the said purchasers the monthly installments as they became due and payable for said books.

9. That the defendant, Wm. McD. Burgin, is Sheriff of the county of McDowell, State of North Carolina, and a part of the duties of his office is to collect all license tax imposed by Chapter 9 of the Laws of 1901, in the county of McDowell.

10. That on the 18th day of December, 1901, the defendant demanded of plaintiffs' collecting agent, Watson, a license tax of twenty dollars, which defendant alleged was due by plaintiffs under Section 54, Chapter 9, of the Laws of 1901, for selling books in McDowell County in the manner hereinbefore set forth.

11. That plaintiffs' agent, Watson, refused to pay the said amount demanded by the defendant to be paid, whereupon de-

fendant levied upon a set of the works of Honore de Balsac, consisting of 25 volumes, and worth the sum of $28, which belonged to plaintiffs, and which was then in the possession of J. L. C. Bird for the purpose of selling the same to make the amount demanded by him from plaintiffs' agent for the privilege of doing business in McDowell County as aforesaid.

12. That plaintiffs insist that they are liable for no tax under the Revenue Act of the State of North Carolina, and that the seizure of said books by the defendant was unauthorized and unwarranted. Whereupon the plaintiffs demand judgment for the sum of $28, the cost of said books, with costs of this action.

These facts, we think, make the plaintiff liable for a tax under Section 54,, of Chapter 9, of the Acts of 1901. Said Section 54 is a re-enactment, in substance, of Section 25, Chap. II, of the Acts of 1899, except the sale of books is exempted from taxes in the Act of 1899, Chap. 25, while such sales are not exempted from taxes in the Act of 1891, Chap. 9, Sec. 54. It has been held that under Section 25 of the Act of 1899, sales made in the manner, in which the plaintiff was effecting sales of these books, made the parties peddlers and liable to a tax. *State v. Franks,* 127 N. C., 510. And the same doctrine was held in *Range Co. v. Carver,* 118 N. C., 328.

But the plaintiff contends that, if it is liable under the terms of Section 54, Chap. 9, of the Act of 1901, said statute is an interference with the doctrine of interstate commerce and void, being in violation of Section 8, Art. I, of the Constitution of the United States. But it has been repeatedly held by this Court that such statutes, applied to facts similar, if not identically the same as these, were not an interference with interstate commerce, and were not unconstitutional. *State v. Gorham,* 115 N. C., 721; 25 L. R. A., 810; 44 Am. St. Rep., 494; *Range Co. v. Carver,* 118 N. C., 328; *State v. Caldwell,* 127 N. C., 521; *Sims v. R. Co.,* at this term.

COLLIER *v.* BURGIN.

The distinction lies in this: It differs from an ordinary shipment from one State to a purchaser in another State, where the title passes to the purchaser upon consignment and delivery to a common carrier for transportation and delivery. In such case, the property passes to the purchaser and consignee upon delivery to the common carrier. In this case, the title is reserved and remains in the consignor, or the plaintiff. The books are shipped in New York or Kentucky, as the case may be, by the *plaintiff, to the plaintiff* in North Carolina, and there is no commerce about it. When the plaintiff gets his goods here, if he wishes to peddle them he must do like other people who have goods and wish to peddle them. He must submit to the laws of this State and obtain a license to do so. He then falls under the doctrine of *Nathan v. Louisiana,* 8 How., 80; *Welton v. Mo.,* 91 U. S., 278; *State v. French,* 109, N. C., 722, 26 Am. St. Rep., 590.

There seems to be some discrepancy in the amount demanded by the defendant in the "facts agreed" and the amount stated in the statute. But as our attention was not called to this on the argument by either side, we suppose that if there was anything in it, it was waived, as both sides seem to be desirous of having the constitutional question passed upon by the Court.

The judgment appealed from is
Affirmed.