## STONE v. THE STATE.

1. Penal Code, § 600, making it a misdemeanor for any peddler, or itinerant trader, except such as are exempted by law, to sell any goods, wares, or merchandise, without a license from the proper authority, is not operative against one engaged in interstate commerce.
2. One who, in this State, as the representative of a principal residing in another State, takes orders on such principal for the purchase of goods held in such other State, and who, when the goods are shipped by his principal to him, receives them in this State, breaks the original packages in which they are contained, distributes them among the customers from whom he obtained such orders, and upon delivery receives from them the price of the goods, is engaged in interstate commerce.

Argued December 15, 1902. Rehearing February 2,— Decided March 13, 1903.

Accusation of peddling without license. Before Judge Irwin. City court of Polk county. November 15, 1902.

*Blance, Wright & Tison, R. Toombs Wright*, and *Tompkins & Alston*, for plaintiff in error.

*J. C. Walker, solicitor pro tem.*, contra.

FISH, J. The plaintiff in error, Stone, was brought to trial under an accusation in a city court, charging that he was "a peddler or itinerant trader," and that on or about the 29th day of March, 1902, in the county of Polk, in this State, he "did sell goods, wares, merchandise, to wit, clocks, etc., . . . without license from the proper authorities," contrary to law. A trial by jury being waived, the presiding judge heard the case upon the following agreed statement of facts: The accused "was engaged in selling clocks by making a house-to-house canvass, soliciting orders for the same," and "he did make sales in Polk county, Georgia, on or about the 29th day of March, 1902, and had no license." He "is a resident of Alabama, and is a traveling salesman for the L. B. Price Mercantile Co., a corporation chartered under the laws of Tennessee, and having [its] store in the city of Chattanooga. As such salesman Stone traveled and sold merchandise, clocks, etc., for the Price Mercantile Co. Defendant first came into Polk county and took orders for the various goods handled by the Price Mercantile Co. He then sent the orders to the office of the Price Mercantile Co., at Chattanooga, where the goods were. If the company approved the sales or orders, they would box up the goods sold and ship them to defendant Stone, all in one package, and Stone would receive them and deliver them

to the parties who had given him the orders.　Stone never carried any goods with him for sale.　Sales were made at residences."　The accused was found guilty of the offense with which he was charged; and, being dissatisfied with the outcome of the case, made a motion for a new trial, based on various grounds.　In his bill of exceptions he complains of the overruling of this motion.

In view of previous rulings of this court, the accused was a peddler.　*Wrought Iron Range Co.* v. *Johnson*, 84 *Ga.* 754; *Racine Iron Co.* v. *McCommons*, 111 *Ga.* 547.　The controlling question made by the record is, whether the business carried on by the accused in the county of Polk comes within the protection afforded by the "interstate-commerce clause" of the Federal constitution.　If we were free to follow the ruling and reasoning of this court, we would have to answer the question in the negative.　*Racine Iron Co.* v. *McCommons*, supra.　A decision of the Supreme Court of the United States construing a clause of the Federal constitution is, upon the question involved, the supreme law of this State, and consequently must be followed by this court, whatever may be our views as to the soundness of such a decision.　In the case of Caldwell *v.* North Carolina, decided by the Supreme Court of the United States on the 12th of January last, that court rendered a decision which requires us to hold that the business of the accused was protected by the "interstate-commerce clause" of the Federal constitution.　At the June term of the superior court of Guilford county, North Carolina, Caldwell was convicted of the alleged offense of having engaged in the business of delivering pictures without having first obtained a license so to do.　An ordinance of the City of Greensboro, N. C., provided, " That every person engaged in the business of selling or delivering picture-frames, pictures, photographs or likenesses of the human face, in the City of Greensboro, whether an order for the same shall have been previously taken or not, unless the said business is carried on by the same person in connection with some other business for which a license has already been paid to the city, shall pay a license tax of ten dollars for each year.　Any person engaging in said business without having paid the license tax required herein, shall be fined twenty dollars, and each and every sale or delivery shall constitute a separate and distinct offense."　It appeared that during 1900 the accused, being employed by the Chicago Portrait Company, a foreign corporation of Chicago, Ill., went to Greensboro, N. C.,

for the purpose of delivering certain pictures and frames for which contracts of sale had previously been made by other employees of the Chicago Portrait Company, who had preceded the defendant in Greensboro; that the accused went to the Southern Railway freight station and took therefrom large packages of pictures and frames which had been shipped to Greensboro, N. C., addressed to the Chicago Portrait Company, carried these packages to the rooms of the accused in a certain hotel in Greensboro, and there broke the bulk, placing said pictures in their proper frames, and from this point delivered the pictures, one at a time, to the purchasers in the City of Greensboro; that neither the accused, the Chicago Portrait Company, nor any of the employees of the company had paid the city any license tax; and that the accused had been engaged in the work of delivering pictures two days when arrested. The trial court sentenced the accused to pay a fine of twenty dollars and the costs of the prosecution. The case was carried to the Supreme Court of North Carolina by the accused, where the judgment of the trial court was affirmed by a majority decision; and thereupon the case was carried by writ of error to the Supreme Court of the United States.

The Supreme Court of North Carolina endeavored to distinguish the case from that of Brennan *v.* Titusville, 153 U. S. 289, and Furches, J., who delivered the opinion, said: "The defendant insists that Brennan *v.* City of Titusville . . is directly in point, —is in every essential fact this case,— and should control the opinion of the court on this appeal. And it is in many respects like this case, but there is one material difference between that case and this, which marks the distinction. In that case the goods were shipped directly to the purchaser. In this case they were shipped by the Chicago Company to itself, in the city of Greensboro; and when they reached Greensboro the defendant, as the agent of the Chicago Company, received them from the railroad at its depot, carried them to its rooms in Greensboro, opened the boxes in which they were shipped, took out the pictures and picture-frames, assorted them and put them together, and delivered them to the purchaser in the city of Greensboro, and had been engaged in this work two days when arrested. If they had been completed and shipped directly to the parties for whom they were intended, this case would have fallen within the decision of Bren-

nan *v.* City of Titusville ; . ·. and we should hold, as it was held
there, that it was an interference with interstate commerce, and
that the defendant was not guilty.　　But to our minds there is a
decided difference between this case and that.　　The contract to
make and deliver these pictures was an executory contract, and no
title passed by this contract. . . .　If they had been completed
in Chicago, and under contract shipped to the purchaser, the title
would have passed to the consignee upon delivery to the railroad
in Chicago ; the railroad being deemed to be the agent of the con-
signee, . . . and Brennan *v.* City of Titusville . . would have
applied, as the tax would have been upon the commerce.　　But, in-
stead of completing the pictures in Chicago, and shipping them to
the parties who had contracted for them, they were shipped to
itself (the Chicago Portrait Company), in Greensboro.　　This being
so, no title ever passed from the Chicago Portrait Company until
the pictures were put in the frames and delivered by the defendant.
These pictures belonged to the Chicago Company when they were
shipped from Chicago, and belonged to it when they got to Greens-
boro.　　And the question is, could the Chicago Portrait Company,
because it was a foreign corporation, engage in the business of
completing these pictures, and in selling and delivering them, in
Greensboro, without becoming liable for a city tax, for which its
own citizens would be liable ?　　It seem to us that it could not."
37 S. E. 139.

It will be observed that the same line of reasoning was used in
*Racine Iron Co.* v. *McCommons,* supra, in distinguishing that case
from the cases in which decisions had then been rendered on the
subject by the Supreme Court of the United States.　　Mr. Justice
Shiras, delivering the opinion in the Caldwell case, said: " We are
not persuaded by this reasoning.　It seems to proceed upon two
propositions — first, that the pictures in question were not com-
pleted before they were brought to Greensboro ; and, second, that
the articles were not shipped directly to the purchasers, but to the
agent of the senders in Greensboro."　　After disposing of the first of
these propositions, the discussion of which is not pertinent to the
case which we have in hand, the learned Justice proceeded to say :
"Nor does the fact that these articles were not shipped separately
and directly to each individual purchaser, but were sent to an agent
of the vendor at Greensboro, who delivered them to the purchasers,

deprive the transaction of its character as interstate commerce. It was only that the vendor used two instead of one agency in the delivery. It would seem evident, that if the vendor had sent the articles by an express company, which should collect on delivery, such a mode of delivery would not have subjected the transaction to State taxation. The same could be said if the vendor himself, or by a personal agent, had carried and delivered the goods to the purchaser. That the articles were sent as freight by rail, and were received at the railroad station by an agent who delivered them to the respective purchasers, in no wise changes the character of the commerce as interstate. Transactions between manufacturing companies in one State, through agents, with citizens of another constitute a large part of interstate commerce; and for us to hold, with the court below, that the same articles, if sent by rail directly to the purchaser, are free from State taxation, but if sent to an agent to deliver, are taxable through a license tax upon the agent, would evidently take a considerable portion of such traffic out of the salutary protection of the interstate-commerce clause of the constitution. It can not escape observation that efforts to control commerce of this kind, in the interest of the States where the purchasers reside, have been frequently made in the form of statutes and municipal ordinances, but that such efforts have heretofore been rendered fruitless by the supervising action of this court. The cases hereinbefore cited disclose the truth of this observation." The cases cited and discussed were: Robbins v. Shelby Taxing District, 120 U. S. 489; Asher v. Texas, 128 U. S. 128; Stoutenberg v. Hemmick, 129 U. S. 141; Lyng v. Michigan, 135 U. S. 161; Crutcher v. Kentucky, 141 U. S. 47; Brennan v. Titusville, 153 U. S. 289; Stockard v. Morgan, 185 U. S. 27. As already said, the decision made in Caldwell's case controls the case that we have under consideration; and it follows that the judgment of the trial court, overruling the motion of the accused for a new trial, must be                     *Reversed. By five Justices.*