### 3983. BROWNING *v.* CITY OF WAYCROSS.

The interstate-commerce clause of the Federal constitution does not prohibit a State or one of its subordinate political subdivisions from imposing a reasonable occupation tax upon the business of "putting up or erecting lightning-rods," and a person engaged in such a business is subject to the tax, notwithstanding it appears that the lightning-rods were sold by him as agent for a non-resident manufacturer, under a contract which required the seller to install the lightning-rods. This is true without reference to whether the lightning-rods are shipped from another State directly to the purchaser or are shipped as a part of a common mass with other property of the same character to the agent of the seller and distributed by him to the purchaser. Such a tax affects only incidentally, and does not impose an unlawful burden upon interstate commerce.

DECIDED APRIL 2, 1912. REHEARING DENIED APRIL 16, 1912.

Certiorari; from Ware superior court—Judge Parker. April 19, 1911.

*J. L. Sweat,* for plaintiff in error.
*C. L. Redding, Wilson, Bennett & Lambdin,* contra.

POTTLE, J. The plaintiff in error was convicted of the violation of an ordinance of the City of Waycross, and excepts to the overruling of his certiorari. The ordinance imposed an occupation tax of $25 "upon lightning-rod agents or dealers engaged in the business of putting up or erecting lightning-rods." The plaintiff in error was employed as agent of the St. Louis Lightning Rod Company, a non-resident corporation, to solicit orders for lightning-rods. During the year 1911 he, together with another agent of that company, solicited a large number of orders in the City of Waycross. The manner in which the business was carried on was that the purchaser would deliver to the soliciting agent a written order, addressed to the agent, for a certain quantity and quality of lightning-rods, and at a certain price. In the written order there was nothing said directly in reference to the installation of the lightning-rods bought, but it was understood that this was to be done by

the agent taking the order, or some other agent of the seller. It was the practice that the orders, when taken, were forwarded to the residence of the seller, and, when a sufficient quantity to make up a car-load had been sold, as shown by these orders, the car would be shipped to Waycross, consigned to the St. Louis Lightning Rod Company. Upon arrival of the car in Waycross the agent who was to make delivery would take the lightning-rods from the car, load them on a wagon, and deliver them in this way, from house to house, to the purchasers. There was no mark on any particular set of lightning-rods to indicate that they were designed for any particular individual. They were received in bulk by the agent, and from the car of rods the various orders would be filled, according to the specifications set out in each. It required special skill to put the rods together and install them on the house, but this was done without any extra charge above the amount stated in the order. When the rods were installed on the house the amount of each order would be collected in cash or notes by the agent and transmitted to his employer in St. Louis. The plaintiff in error had not paid the occupation tax required by the ordinance for the year 1911, nor had any one else paid it for him.

The only point presented for our consideration is whether the ordinance of the City of Waycross is void, as being in conflict with the interstate-commerce clause of the Federal constitution. In 1899, upon the authority of the decisions of the Supreme Court of the United States, as they were then understood and construed, the Supreme Court of this State held that the commerce clause of the Federal constitution does not prevent a State from imposing, for revenue purposes, a license tax upon agents of principals residing in other States, who make executory contracts for the sale of goods, and who, when the goods are shipped into this State, receive them in bulk, break the original packages in which they are contained, and distribute them among the customers. *Racine Iron Co.* v. *McCommons,* 111 *Ga.* 536 (36 S. E. 866, 51 L. R. A. 134). That decision was based upon the idea that, the goods having been shipped into this State in bulk to the agent, who distributed them among the purchasers, in compliance with their respective contracts, the State had complete authority to impose a tax upon the business of the agent, since the goods were not actually delivered to the purchaser until after they became a part of the mass of

property in this State. After the rendition of that decision, and in 1903, the Supreme Court of the United States had under consideration a case from North Carolina (Caldwell *v.* North Carolina, 187 U. S. 622, 23 Sup. Ct. 229, 47 L. ed. 336) involving practically the same facts. In that case it appeared, that the agent took orders for portraits to be shipped into North Carolina by a Chicago corporation; that the orders were taken and forwarded to this corporation, and, when a sufficient number had accumulated, the corporation would load the portraits into a car and ship them by freight to North Carolina, consigned to the order of the corporation itself or to its agent. Upon arrival of the car the agent would take charge of it, put the portraits in the frames to which they belonged respectively, and deliver them to the purchasers. The Supreme Court of North Carolina held that the ordinance was a valid exercise of the taxing power of the City of Greensboro, for the reason that the portraits were shipped to the order of the seller, and the agent of the seller opened the boxes in which the portraits were shipped, took out the portraits and frames, assorted them and put them together, and delivered them to the purchasers in the City of Greensboro. This was thought by the Supreme Court of North Carolina to be the distinction between the case then being dealt with and the case of Brennan *v.* Titusville, 153 U. S. 289 (14 Sup. Ct. 829, 38 L. ed. 719). This distinction, however, was summarily disposed of by the Supreme Court of the United States on review, and it was directly held, in a unanimous decision, that the ordinance in question operated as an unlawful burden on interstate commerce, and was for this reason void. After the rendition of that decision similar cases again reached the Supreme Court of Georgia, and the former ruling of our Supreme Court was overruled, and it was held that, "one who, in this State, as the representative of a principal residing in another State, takes orders on such principal for the purchase of goods held in such other State, and who, when the goods are shipped by his principal to him, receives them in this State, breaks the original packages in which they are contained, distributes them among the customers from whom he obtained such orders, and upon delivery receives from them the price of the goods, is engaged in interstate commerce." *Stone* v. *State,* 117 *Ga.* 292 (43 S. E. 740). To the same effect see *Kehrer* v. *Stewart,* 117 *Ga.* 969 (44 S. E. 854).

Since the decisions of the Supreme Court of the United States upon questions involving the construction and application of the Federal constitution are the supreme law of this State, it becomes necessary to ascertain whether there is any valid distinction between the case now in hand and the case of Caldwell *v.* North Carolina, supra. If there is no rational distinction, this ordinance must be held to be void. It is argued that a material point of difference exists in the fact that no separate lot of lightning-rods were designed for any particular individual, but that they were shipped in car-load lots in a common mass, received by the agent of the seller in this State, put together with such mechanical skill as was necessary for the purpose, and delivered from house to house in compliance with the orders previously given, and that no particular purchaser had any claim upon or title to any particular set of lightning-rods. It is said this is altogether unlike the case wherein the portraits were sold and delivered, because there, from the very nature of the case, each particular portrait was designed for some particular purchaser. We are inclined to think that this distinction which counsel seeks to draw is somewhat shadowy and unsubstantial. In the portrait case the agent in North Carolina put together the frames, placed in each frame the portrait for which it was designed, and in this condition delivered the portrait and frame to each purchaser. But without reference to whether there is any rational distinction between the two cases so far as this point is concerned, we do believe there is a material point of difference between the cases. It will be observed that in all of the cases which have been passed upon by the Supreme Court of the United States, including the Caldwell case, the tax was levied, either directly or indirectly, on the business, because a "tax on the occupation of doing a business is a tax on the business." It is freely conceded by us, as it must be, that if this ordinance, properly construed, imposes any substantial burden on interstate commerce, whether directly or indirectly, it is absolutely void and of no effect. The ordinance does not purport to levy a tax or license fee either upon the business of selling lightning-rods or upon the agency appointed by the seller to consummate this purpose. It undertakes merely to impose a tax "upon lightning-rod agents or dealers engaged in the business of putting up or erecting lightning-rods." Courts are always inclined, where it can be done

without violence to the language employed, to give to a law a construction which prevents it from coming in conflict with the fundamental law of the State or general government. The primary object of this ordinance is to exact a license fee from persons engaged in putting up or installing or erecting lightning-rods. The business of installing lightning-rods is not so necessary a part of the business of manufacturing and selling lightning-rods as that the two can not be separated for purposes of taxation. The evidence shows, and we know judicially, that it requires more or less mechanical skill to install a system of lightning-rods properly. There is no reason why a purchaser could not buy lightning-rods from the St. Louis manufacturer and install them himself, either directly by his own effort or through the medium of a local agent. For example, if the plaintiff in error had simply taken orders for the sale and delivery of these lightning-rods, and had carried along with him another man, not employed by the manufacturer, who made separate contracts for the installation and erection of the lightning-rods, it could not be doubted that the City of Waycross would have full power and authority to exact from such a person a reasonable occupation tax.

It is true that in the present case it appears that the agent who made the sale likewise agreed, in behalf of his principal and as a part of the contract of purchase, and without increasing the contract price, to install the lightning-rods, but we do not think this makes any substantial difference. Relatively to this matter, the interstate commerce which is protected by the Federal constitution is "the negotiation of sales of goods which are in another State, for the purpose of introducing them into the State in which the negotiation is made." Caldwell *v.* North Carolina, supra. It does not include mere incidents which are not necessary parts of the contract of sale. There are many laws enacted by the States and their subordinate political divisions which incidentally bear upon and affect interstate commerce, but the rule has been announced, time and time again, by the supreme tribunal of the general government, that such laws, having merely an incidental, unsubstantial, and immaterial effect upon interstate commerce, are not prohibited by the commerce clause of the Federal constitution. The non-resident, in carrying on business with citizens of this State, will be protected fully and completely in making and con-

summating contracts of sale, up to and including actual delivery to the purchaser, but we do not believe that it was ever contemplated by the commerce clause of the constitution, or by the decisions of the United States Supreme Court construing it, that an agent appointed by a non-resident, not only to make a sale, but to perform some other act, not a necessary part of the sale and having no necessary connection with interstate commerce, would be exempt from the reasonable exercise of the taxing power of the State, operating solely upon the act which is not a necessary part of the contract of sale.

A case might be conceived of where, on account of the peculiar nature of the article or the secrecy of the process, only the seller or manufacturer could put it in condition to be used, and where the article would be worthless unless delivered in complete state, ready for use. In such a case, to take away the right to put it in condition for use would practically destroy the sale; and hence, where the article is the subject of an interstate sale, to tax the right to install it would be an unlawful interference with interstate commerce. For example, if a portable house should be the subject of an interstate sale, and it could only be put together by a process known to the manufacturer, he would be protected from interference, both in making the sale and in erecting the house. But if, on the other hand, the house was simply made of blocks which could be cemented together by any one skilled in general work of that nature, we think the business of putting the house together might be separated, for purposes of taxation, from the business of selling. So, if a grain dealer in Chicago should sell to a planter in Georgia a car-load of seed wheat, the mere fact that, as part of the contract of sale, he agreed to sow the wheat would not preclude the State from collecting from him a license fee imposed upon the business of planting grain for hire. Here it does not appear that installation is a necessary part of the transaction. So far as appears, any skilled mechanic can put up lightning-rods. While some special aptitude is required, it is not of such a peculiar character as to justify the inference that it would unduly hamper or prevent the sale if the seller should not install the rods on the purchaser's house. Hence, to tax merely the business or occupation of installing the rods is not an unlawful interference with interstate commerce.

The only case which has been called to our attention involving the exact question now presented is that of State v. Gorham, 115 N. C. 721 (44 Am. St. R. 494, 20 S. E. 179, 25 L. R. A. 810), wherein the Supreme Court of North Carolina reached the same conclusion that we have arrived at in this case. In principle a recent decision of the Supreme Court of Alabama is also in point. American Amusement Co. v. East Lake Chutes Co., 56 So. 961. The case is unlike that of *Rogers* v. *Sandersville,* 120 *Ga.* 193 (47 S. E. 557), where it was held that the posting of bills to advertise wares for sale was only incidental to the sale, and could not be separated from it for purposes of taxation. There could be no sale without advertisement of some sort, either by word of mouth or printed signs, or display of the goods and the like. Such an act is merely an offer or invitation, and is necessarily part and parcel of the sale. Such is not the case where the business upon which the tax is laid is not necessary to effectuate the sale, though it may in point of fact facilitate it. As was said by Mr. Justice Lamar in the *Rogers* case, "a man may have more than one business, and be taxed for each." The business of building houses might facilitate the sale of building materials, but one engaged in both enterprises could be taxed for each. We hold that the ordinance involved was a valid exercise of the taxing power of the City of Waycross.

*Judgment affirmed. Russell, J., concurs dubitante.*