(39 App. Div. 490.)

## DECHERT v. MUNICIPAL ELECTRIC LIGHT CO.

Supreme Court, Appellate Division, First Department.    April 7, 1899.

1. SECOND TRIAL—LAW OF THE CASE.

The decision of the appellate division, that the question is for the jury whether two instruments are parts of one transaction, and constitute one contract, is the law of the case of a second trial.

2. CONTRACTS—ELECTRICITY—DEFECTIVE WIRING—RELEASE.

An inspector of the board of fire underwriters inspected the electric wiring equipment in a building, and made a report thereon, treating the wiring and the equipment separately, and thereupon the board of underwriters certified that the electrical equipment was in compliance with the standard requirements of the board. *Held*, that the certificate was not an approval of the wiring, within a provision of a contract for wiring the building and supplying it with electrical equipments, releasing the electric light company from damages from the use of electricity, if the wiring and electrical equipment of the premises had been approved by the board of fire underwriters, because the wiring was not included in the term "electrical equipment."

3. SAME—EVIDENCE—RULES FOR INSULATING WIRES.

On an issue whether an electric light company had defectively insulated its wires in a building, rules of boards of fire underwriters and other electric light companies, prescribing the manner of wiring buildings, are inadmissible.

4. WITNESSES—CORROBORATION—PRIOR CONSISTENT DECLARATIONS.

Though contradictory statements of a witness have been shown, evidence of his having, soon after the occurrence testified to, made statements consistent with his testimony, is inadmissible in corroboration, in the absence of a contention that his evidence on the trial is a fabrication, and given under the influence of a motive which came into existence subsequent to the occurrence testified about.

Appeal from trial term, New York county.

Action by Yellett D. Dechert, as receiver, for the benefit of the creditors of Joseph Ryan, against the Municipal Electric Light Company. There was a judgment for defendant, and plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and PATTERSON, JJ.

Louis Marshall, for appellant.

Paul D. Cravath, for respondent.

RUMSEY, J. The action is brought to recover damages suffered by Joseph Ryan, for whom the plaintiff has been appointed receiver, because of the destruction of his place of business, owing, as it is claimed, to the negligence of the defendant in not properly insulating electric wires, the consequence of which was that the electricity set fire to the building and destroyed it. The defense was that the defendant had been released by the contract from all claims for defective wiring, upon certain conditions, with which the defendant had complied. The contract in question was contained in two separate papers, in one of which is found the release relied upon by the defendant. The contract for wiring is not on the same paper as the contract which contained the release, and the plaintiff insists that the two papers constituted, not one, but two, separate contracts; and several of the exceptions taken upon the trial grow out of this

contention on the part of the plaintiff. Upon this point the decision of this case on the former appeal, which is reported in 9 App. Div. 573, 41 N. Y. Supp. 692, is conclusive upon the plaintiff; and it must be accepted as the law of the case that the question was properly left to the jury whether the two papers constituted one contract or not. The questions raised by the exceptions bearing upon that point are not examined, therefore, as they must be considered as determined by the opinion written upon the former appeal.

But these are not all the exceptions in the case. Joseph Ryan made a contract, on the 19th day of July, 1892, with the defendant, by which the defendant agreed to wire his premises, Nos. 1059 and 1061 Broadway, Brooklyn, in a manner more particularly described therein, for which Ryan agreed to pay them $600 in the manner provided in the contract. At the same time, and as a part of the same contract, as the jury have found, the defendant was requested, and agreed, to supply the electrical current and electrical equipments for lighting the premises. That contract was also in writing, and contained several conditions, of which the eighth is as follows:

"The company [meaning the defendant] is hereby released from all claims for damages resulting from the use of electrical current, when the wiring and electrical equipments on the premises of the consumer shall have been approved by the New York Board of Fire Underwriters, or other proper authorities." .

This was the condition upon which the defendant relied as releasing it from all claim for damages on account of any negligent wiring, if any such thing there was. Upon the trial, the court first submitted to the jury the question whether the two instruments were parts of one negotiation and one agreement, and were understood by the parties to constitute only a single agreement, and then charged, in substance, that if the papers were but one single agreement, then term 8 (above quoted) limited the liability of the defendant with reference to the wiring of Ryan's buildings, and that the defendant in such case would be entitled to a verdict, in view of the uncontradicted evidence that, before the date of the fire, the wiring and electrical equipment on Ryan's premises had been approved by the New York Board of Fire Underwriters. To this charge, in the various ways in which it was given to the jury, the plaintiff excepted.

The plaintiff insists that the defendant never had complied with the condition in term 8, and never had procured the wiring and electrical equipments on the premises to be approved by the New York Board of Fire Underwriters. If that be so, then, undoubtedly, the charge was erroneous, and the exception was well taken. In examining the question whether the wiring and electrical equipments were approved, it must be remembered that term 8 of the contract, which provides for a release of the defendant from liability in case of such approval, was drafted by the defendant itself, and was one of the conditions imposed by the defendant upon Ryan in the contract which it drew. It must, therefore, be construed strictly, as against the defendant, which drew the contract and framed the terms of it to suit itself. The condition of the release is that the wiring and electrical equipments shall be approved. While it must

be conceded, as the jury have found, that the contract for wiring and electrical equipment was one thing, made at the same time and as a part of the same transaction, yet it must not be forgotten that the specifications for the wiring are upon a different paper than the contract for the putting in of the electrical equipment, and that the wiring, while a part of the same contract, is to be performed under different conditions, and to be paid for in a different way, from the electrical equipment. Although the two were provided for by one contract, yet they are clearly two separate things, and are so regarded in the contract, and clearly made to appear so by the evidence in the case. When, therefore, term 8, providing for the release, prescribes that the wiring and electrical equipments upon the premises shall be approved, it evidently requires the approval of one, just as much as the other, and the defendant is to be absolved from negligence only in case the provisions of the contract in respect of both shall be strictly complied with. By way of proving that compliance, the defendant offered a certificate, which was headed "The New York Board of Fire Underwriters, Bureau of Surveys, New York, August 19th, 1892," and read as follows:

"This certifies that the electrical equipment of the Municipal Electric Light Company" on the premises in question "is in full compliance with the standard requirements of the board, adopted January 15th, 1890, as per inspector's report dated August 18th, 1892, and numbered 11,142."

This paper was signed, "James Harrison, Assistant Superintendent." Indorsed upon this paper was the following:

"Present condition of equipment approved. See indorsement on report 11,142."

This, also, was signed by the assistant superintendent. In connection with that report there was offered in evidence the report furnished to the New York Board of Fire Underwriters by the inspector, which was received and appears in the record. It appears from that report that the electrical equipment was examined, and its condition stated, and that a certain portion of the report relates especially to the wiring, and contains the answers to certain questions in that regard applying to that particular thing.

We think that this certificate was not a compliance with the requirements of the eighth term of the contract, so as to release the defendant from liability for damages occurring because of its negligence in wiring the premises. What the plaintiff was entitled to was, not only that the wiring should be inspected by some one authorized by the board of fire underwriters to do it, but that after the inspection it should be approved by that board. It is not necessary to consider here whether the inspection was such as the plaintiff had the right to have, or whether the terms of the contract are broad enough to release the defendant from its own negligence in wiring, even though the wiring had been approved. All that it is necessary for us to say is that, before the defendant could insist upon the release provided for in term 8, it was necessary that it should show that the wiring as well as the electrical equipment had been approved by the board. This the certificate does not show. On the contrary, although the inspector seems to have made a report

as to the wiring, which was practically separate from the report as to the electrical equipment, yet the certificate offered in evidence studiously avoids any reference to the wiring, and is confined solely to an approval of the equipment. It is not to be inferred that the words "electrical equipment," used in the certificate, included the wiring, as is claimed by the defendant, but that the term was used because it was not intended to include the wiring. Indeed, in view of the special requirements of term 8, it is quite clear that the terms "electrical equipment" and "wiring" are used as representing two different things, as they evidently were in the contract, and that the electrical equipment, being an entirely different thing from the wiring, put in after the wiring was completed, could not be deemed to include the wiring, which was a different thing, done at a different time, and not necessarily connected with the equipment. We think, therefore, that there was no evidence to show that the provision of term 8 had been complied with by the defendant, and for that reason the objection to the charge was well taken.

There are two exceptions to evidence which, we think, should be considered. The plaintiff, as bearing upon the question of the defendant's negligence, proved, in the first place, the manner in which the wiring had been done, and the means which had been taken for insulating wires. He then offered in evidence the rules of various boards of fire underwriters and electric light companies, prescribing the way in which wiring should be done. This evidence was objected to, and was excluded, and the plaintiff insists that this ruling was erroneous. With this contention we do not agree. The question presented here was simply whether the work in question was properly done. That was to be determined by evidence showing, in the first place, in what way it was done, and then showing whether or not the work, as done, was proper. Whether the work done was proper was to be proved by the evidence of persons who were familiar with the manner of doing it, and were able to say whether work done as this was would provide a proper insulation for the wires. That was to be proved by testimony of the fact, and the sworn opinion of witnesses, if necessary, based upon the facts. The rules of other companies were neither statements of fact nor sworn testimony of opinion. They were, at best, only the declarations of various people, made out of court, and not under sanction of an oath, as to what, in their opinion, would be a proper mode of insulating wires through which electricity was intended to be conducted. They were of no greater force than the declarations of anybody else, and for that reason they were entirely incompetent.

The case of Abel v. Canal Co., 103 N. Y. 581, 9 N. E. 325, and 128 N. Y. 662, 28 N. E. 663, and cases of that kind, are entirely different. The claim of the plaintiff in that case was that the defendant had not made proper rules for the government of its employés; and, by way of showing that rules might have been made, and that proper rules would have protected the plaintiff's intestate, the plaintiff was permitted to give in evidence rules of other companies engaged in the same business, as showing that it was feasible to provide rules which should protect the employé. The question there

was whether rules should have been promulgated, and it was an important thing, upon that point, to show that other companies engaged in the same business did promulgate rules upon that subject, for the purpose for which it was claimed the defendant should have done the same thing. But, in this case, the question whether rules had been adopted, or not, was entirely unimportant. The question was whether certain work had been done in a proper and workmanlike way, and that was to be determined, as we have said, not by the unsworn declaration of various companies prescribing how that work should be done, but by sworn testimony addressed to that particular point.

Joseph Ryan, who had been the owner of these buildings, had been sworn by the plaintiff, and had given testimony as to the manner in which the fire occurred. Upon his cross-examination, he was confronted with declarations which it was said he had made, and which tended to contradict the evidence given by him upon the trial. After the cross-examination the plaintiff offered in evidence, having duly proved its genuineness, another declaration of Ryan, made before the fire marshal of the city of Brooklyn shortly after the fire, and before his other declarations had been made, stating the circumstances under which he discovered the fire, substantially as they had been given upon the trial. That evidence was objected to, and excluded, and its exclusion is now relied upon as error. We think it is not erroneous. The rule undoubtedly is that proof of declarations made by a witness out of court cannot be used in corroboration of testimony which he has given upon the trial of a cause. There are few exceptions to this rule. Where it is claimed that the witness has given his testimony under the promptings of some motive which affected him at the trial, it has been permitted to give proof of his declarations, made before the motive existed, as tending to disprove its operation upon his mind; but this is practically the extent of the exception to the admission of such declarations. The mere fact that the declaration offered in corroboration was made shortly after the occurrence, and long before the testimony was given upon the trial, does not, of itself, afford any reason for inferring that the testimony upon the trial was correct; and, although it was said in a leading case (Robb v. Hackley, 23 Wend. 50) that, in contradiction of evidence tending to show that the account of the transaction given by the witness is a fabrication of late date, it may be shown that the same account was given by him before its ultimate effect and operation, arising from a change in circumstances, could have been foreseen, yet where the contradiction simply goes, as in this case, to the credit to be given to the recollection of the witness, the fact that he has previously stated the transaction in the same way as he had upon the trial is not competent by way of corroboration. Such evidence is only competent, if at all, where the charge is that the evidence given upon the trial is a fabrication made out of whole cloth, under the influence of a motive which has come to operate since the occurrence; and, where that is the case, it may well be that the exception which permits proof of a declaration before the motive came into existence is material.

For the error, however, in the judge's charge, herein indicated, the judgment must be reversed, and a new trial ordered, with costs to the appellant to abide the event of the action. All concur.