of the property and the person in whom the title had vested was not a party to the action and before the court; and this allegation that the defendant is not now the owner of the property was in the nature of an answer to the presumption which would arise from the allegation that the property had been conveyed to the answering defendant. I think, therefore, that for the reason that the complaint does not state a good cause of action, and also for the reason that the clause demurred to is not a separate defense, but matter in answer to the allegations of the complaint, the demurrer should have been overruled.

It follows that the interlocutory judgment appealed from must be reversed, with costs, and the demurrer overruled, with costs, with leave to the plaintiff to withdraw the demurrer upon payment of costs in this court and in the court below. All concur.

---

(103 App. Div. 310.)

GERMAN–AMERICAN INS. CO. v. NEW YORK GAS & ELECTRIC LIGHT, HEAT & POWER CO. et al.

(Supreme Court, Appellate Division, First Department. April 7, 1905.)

1. ELECTRICITY—WIRING BUILDINGS—NEGLIGENCE—FIRES.

In an action against an electric company for loss by fire, evidence *held* to require submission to the jury of the questions whether the fire was communicated by defendant's electric wires, and whether defendant was guilty of negligence in wiring the building.

2. SAME—EVIDENCE—EXPERTS.

In an action against an electric company for destruction of property by fire alleged to have been communicated by defendants' electric wires, charged to have been negligently constructed, a hypothetical question asked of an expert, assuming facts proved with reference to the construction in question, and asking for his opinion as to whether that was good construction, was properly allowed.

[Ed. Note.—For cases in point, see vol. 20, Cent. Dig. Evidence, §§ 2369–2374.]

3. SAME—PUBLIC REGULATIONS—COMPLIANCE.

In an action against an electric company for the destruction of property by fire alleged to have been communicated by electric wires improperly attached to a building, unverified certificates showing that the work was in compliance with the regulations of the various city departments and of the board of fire underwriters were inadmissible.

Ingraham, J., dissenting.

Appeal from Trial Term, New York County.

Action by the German-American Insurance Company against the New York Gas & Electric Light, Heat & Power Company and others. From a judgment on a verdict in favor of plaintiff, and from an order denying defendants' motion for a new trial, they appeal. Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Henry J. Hemmens, for appellants.
Richard J. Donovan, for respondent.

McLAUGHLIN, J. On the 25th of February, 1900, a building in the city of New York, together with personal property therein belonging to certain tenants, was destroyed by fire. The plaintiff and other

insurance companies, having issued policies to such tenants indemnifying them against loss or damage, and, after the fire, having paid such losses, were subrogated to the rights of the tenants. Thereafter the claims of the other insurance companies were assigned to the plaintiff, which brought this action to recover from the defendants the aggregate amount of the loss, on the ground that the destruction of the property covered by the policies of insurance was caused by their negligence in constructing and thereafter maintaining their electric wires upon the building. The answer denied all of the material allegations tending to show negligence on the part of the defendants. At the trial there was substantially no dispute as to the destruction by fire of the property referred to in the complaint, or that it was of the value as therein alleged. It, however, was seriously contested that such destruction was caused by the defendants' negligence, and much evidence was offered by both parties bearing on that subject. At the conclusion of the trial the case was submitted to the jury with appropriate instructions as to the rights of the respective parties. The jury returned a verdict in favor of the plaintiff for the amount claimed, and from the judgment entered thereon and an order denying a motion for a new trial, defendants have appealed.

I am of the opinion that the learned trial justice did not err in submitting the question of defendants' liability to the jury, and that the evidence is sufficient to sustain their verdict. From this evidence it appeared that in 1896 the North River Electric Light & Power Company (since succeeded by the defendant the New York Edison Company), for the purpose of furnishing lights to the tenants, installed a system of electric wires upon the building, and has since maintained the same. This system consisted of two primary wires, carrying a current of 1,000 volts, which ran from a pole in front of the building into a transformer fastened thereon, where the current was reduced to a lower voltage, and then distributed throughout the building by means of secondary wires. These secondary wires carried about 50 volts, and extended from the transformer to porcelain insulators below it, and from there they extended over the outer edge of a metal cornice into the building. The wires, at the time they were erected, were covered with rubbber, and entirely insulated, and were separated from the building by the two porcelain insulators referred to. The plaintiff contended, and evidence was offered sustaining such contention, that the wires were improperly placed in the first instance, in that they were so constructed that in passing from the insulator to the outer edge of the cornice of the building they came in contact with the metal, which permitted a short circuit to be formed, by reason of which it was melted, and the wood underneath ignited; that the rubber covering had worn off, and the naked wire came in contact with such cornice, with the same result; that this set fire to the building and destroyed the property covered by the insurance policies referred to. If the property was destroyed in this way, then it would seem that the defendants were properly held liable for the damages sustained. That the fire was caused by the electric wires I do not think can be seriously questioned. The evidence, if not conclusive, is at least very satisfactory, on this branch of the case. Plaintiff's witness Lynch, a police

officer of the city, testified that while patrolling his post a little after 1 o'clock in the morning of the day when the fire occurred he saw a blue flame coming from the wires which extended over the cornice, and rapped for assistance, to which another police officer (Gordon) responded; that he also notified a fireman in that vicinity of the fact; that the fireman (one Perry) responded to his call, and when he arrived at the scene the flame continued to come from the wire, and thereafter the wood underneath the cornice became ignited, spreading into the other parts of the building; that on top of the metal cornice, and immediately underneath the transformer, there was a hole fused through the metal, and it was here the wood first caught fire. This witness was corroborated by Officer Gordon, who testified: "I saw this wire burning. The wire was on the cornice over the doorway of this house. The transformer was right above where the sparks were. I could see the fire burning into the cornice, and I could see the wire on the cornice." He was also corroborated by the fireman, who testified that he went to the building in response to Lynch's summons, and when he got there he went up on a ladder, and found a hole in the metal cornice directly under the transformer. To use his own language, he said: "At that time I saw fire only in the cornice. There was no fire in any other place in the building as I know of. * * * There was a little fire around the hole in the tin. It was burning inside. This was underneath the big hole." He was also corroborated by another witness, who testified he was getting off a street car in that locality, and saw "sparks coming from above the doorway of the building there, and a sizzling noise and blue flames. * * * There was some fire on the cornice. The fire burned there, before it broke out in other places, possibly an hour. * * * The sparks varied. It was raining and snowing, and every time the snow would fall, possibly it struck that wire, and it sizzled, and a blue flame came out." Much testimony was offered on the part of the defendants that the fire could not have been caused in this way. Notwithstanding that fact, taking the testimony upon both sides, the court could not do otherwise than submit the same to the jury.

It is contended that, if it be conceded that the fire was caused by the wires, this, in and of itself, did not justify a recovery. Assuming, without assenting that such contention is correct, this naturally leads to the inquiry as to whether the defendants were negligent in constructing or thereafter maintaining the wires. At least five witnesses on the part of the plaintiff, who were familiar with the location of the wires and the transformer, either from occupying offices in the building or from having made an examination of them at the time of the fire, testified that the transformer was only six or seven inches above the cornice; that the insulators were below the transformer, and so placed that there was at most but a few inches between them and the top of the cornice, even if the wires did not sag; that the wires did sag, and were lying upon the cornice. This was the testimony of the witness Lynch, already referred to, who was corroborated by the witness Long, who had an office in the building. He testified that he could see the wires every day when he looked out of his window; that there were no porcelain knobs or any insulating materials of any kind

between the building and the outer edge of the cornice; that he saw the wires several days before the fire lying on the metal, and there was no insulation on them.   Substantially to the same effect was the testimony of the witness Horgan, an occupant of the building, who testified that previous to the fire he observed the secondary wires lying on the metal, and the witness Knox also testified that there were no porcelain knobs to prevent the wires from "sagging down." The witness Osterberger, an electrical expert, testified that wires constructed in the manner stated were improperly constructed.   There was also other testimony similar to that already referred to, tending to show that the wires were improperly constructed in the first instance, and also improperly maintained, and, when all of it is considered, it is clear that a case was made for the jury bearing on those subjects.

But it is contended by the appellants that the judgment should be reversed because the court erred in permitting plaintiff's expert to answer a hypothetical question propounded to him.   The question was as follows:

"Q. Mr. Osterberger, assuming that secondary wires carrying fifty volts of electricity are strung along and run over a tin or metallic cornice, which cornice is attached to the building, which secondary wires are attached on the front of the cornice on porcelain knobs, and then extended without any other insulation of porcelain knobs over and along the top of the cornice of the building, state whether or not that is good construction."

This, and similar questions, were duly objected to, the objections overruled, exceptions taken, and the witness answered that it was poor insulation.   The facts assumed in the hypothetical question had been established by the testimony of other witnesses, and it seems to me it was a proper subject for expert evidence, and therefore the court did not err in permitting the witness to answer.   Whether or not a proper method has been adopted in installing and maintaining electric wires upon a building is a subject concerning which but few persons other than experts have any knowledge.   In fact, the whole subject of electricity is one concerning which at the present time but little is known, and it is not a violent assumption to assume there was not a man on the jury who could intelligently determine, without the benefit of the testimony of an expert, whether there ought to have been different insulation than that adopted by the defendants.   It was peculiarly a subject for expert testimony.   In Hart v. Hudson River Bridge Co., 84 N. Y. 56, a witness was permitted to testify that it was not customary to have guards of any kind on drawbridges, and in Ward v. Kilpatrick, 85 N. Y. 414, 39 Am. Rep. 674, the court held that it was competent for a cabinetmaker to testify whether certain work were well done.   In Finn v. Cassidy, 165 N. Y. 584, 59 N. E. 311, 53 L. R. A. 877, the court held it was proper for a witness to give his opinion as to whether a proper method had been adopted in constructing a trench for the purpose of undermining or supporting the foundation of a chimney.   In Chicago v. Greer, 76 U. S. 726, 19 L. Ed. 769, an expert was permitted to state that a test applied to a fire hose was not a proper one; and in Transportation Line v. Hope, 95 U. S. 297, 24 L. Ed. 477, it was held that it was proper for an expert to give his

93 N.Y.S.—4

opinion as to whether it would be prudent for a tugboat to tow three boats abreast, in a high wind, at a certain place.

The defendants sought to show what were the rules and regulations of the various city departments and of the board of fire underwriters with reference to placing electric wires upon buildings, and that these rules and regulations had been complied with so far as the building in question was concerned. Such testimony was excluded on plaintiff's objection, and error is claimed in this respect. I do not think any error was committed in rejecting the testimony. The issue between the parties was whether or not defendants had been guilty of negligence in installing or thereafter maintaining the wires. This issue had to be determined upon evidence showing, in the first instance, how the work was done, and what had thereafter taken place with reference thereto, and the plaintiff was entitled to have the person whose evidence was sought produced, to the end that he might be cross-examined. The unsworn statement as to whether this work was properly done was inadmissible, and it made no difference whether the person making the statement was a private individual or an official. The certificates, etc., offered were unverified, and had no more binding force upon the issue being tried than they would if they had been simply a written declaration by a third party. Dechert v. Municipal Electric Light Co., 39 App. Div. 490, 57 N. Y. Supp. 225.

Other questions are raised by the appellants, but they do not seem to be of sufficient importance to be here considered.

The judgment and order appealed from, therefore, must be affirmed, with costs. All concur, except INGRAHAM, J., who dissents.