# DOMESTIC RELATIONS COURT—CITY OF NEW YORK,

## Oct. 1915.

## COMMISSIONERS OF PUBLIC CHARITIES ex rel. MYERS v. ABRAHAM C. MYERS.

ABANDONMENT OF CHILD BY FATHER.

> An application to have defendant adjudged a disorderly person and to compel him to support his infant child, pursuant to section 685 of the Greater New York Charter, granted where it appeared that said child was born five months after the defendant had left the child's mother and commenced an action for absolute divorce against her and two months after he had obtained an interlocutory decree of divorce, no mention of said child being made in the entire record of the divorce proceedings, it appearing that the defendant is able to support the child, but that the mother, in whose custody the child has remained since birth, is unable to support it.

COBB, C. J.:

This is an application to have defendant adjudged a disorderly person and to compel him to support his infant child, pursuant to section 685 of the Greater New York Charter, as amended.

Josephine Myers, on whose complaint these proceedings were begun, was married to defendant in 1903. In November, 1914, defendant left her and forthwith commenced an action for absolute divorce in the Supreme Court in New York County. After trial of the issues, and on February 15, 1915, defendant obtained an interlocutory decree and the custody of the one child then living was awarded him. On April 3, 1915, another child, the subject of this application, was born, and on June 17, 1915, the usual final judgment was entered. No mention of this child was made in the entire record of the divorce proceed-

ings, and both the interlocutory and final decrees are silent as to it.

The child has at all times remained in its mother's custody and it is beyond dispute that the defendant here refuses to contribute to its support and in effect repudiates it. Also, there is no dispute but that complainant is unable to support the child and that the defendant, on the other hand, is well able to do so.

I must assume that the infant is the child of complainant and defendant and is legitimate. While much was said at the trial by defendant's counsel as to the probable illegitimacy of the child, not a shred of competent evidence was produced in any way sufficient to overcome the strong legal presumption of legitimacy and to show that defendant was not actually its father. While the child was not born in wedlock (giving full force and effect to the interlocutory decree; however, see Matter of Crandall, 196 N. Y., 127; Burton v. Burton, 150 App. Div., 790; People v. Pettit, 103 App. Div., 312, to the effect that interlocutory decree does not dissolve the marriage), nevertheless, it was in all probability conceived several months prior to the time defendant commenced his divorce action. I think, under these circumstances, no doubt can be entertained as to its legitimacy (Cross v. Cross, 3 Paige, N. Y., 139; Mayer v. Davis, 119 App. Div., 99, s. c., 122, id., 393; Timman v. Timman, 142 N. Y. Supp., 298; see also Matter of Matthews, 153 N. Y., 443).

On these facts the question is presented whether or not the defendant by refusing to recognize and support the child has legally abandoned it and is amenable to section 685 of the Greater New York Charter.

Defendant contends that the mother, by keeping silent as to the child during the divorce proceedings, by retaining custody of the child, and also because she was the guilty spouse and was deprived by the court of her older child, has no standing in this proceeding, the relation of husband and wife having ceased and

the rights of the parties having been adjudicated in the Supreme Court.

In support of this defendant relies on a number of authorities, notably Fulton v. Fulton (52 Ohio State, 229), where the husband secured a divorce on account of the wife's cruelty, the wife being awarded the custody of the children. The wife sought to recover from him sums expended for their support and this the court refused.

It is to be observed that in Fulton v. Fulton the divorce record was not only not silent as to the children, but it did not appear that the woman was unable to support the children. It was, moreover, between the parties to the marriage, whereas here the city is primarily interested. Much the same can be said of Burritt v. Burritt (27 Barb., 124), also relied on by defendant, and of numerous other cases, none of which is analagous to the case at bar.

Defendant, however, asserts that as many of these authorities proceed on the theory that the duty to support follows the custody of the child, the blameless father not having the child is under no duty to support it.

The answer is that in this case its legal custody never has been determined. It is merely that the actual custody is in the mother. The father has never asked for the child and apparently does not want it. Certainly the Supreme Court, having no knowledge of it in the divorce proceedings, could make no disposition of it, either as a matter of fact or by legal implication. Defendant's argument that the decree is binding on unborn children who are represented by their parents, by analogy to cases adjudicating devolution of property (e. g. Kamp v. Church of St. Michael, 136 N. Y., 10; Tonelle v. Wetmore, 195 N. Y., 436; Newton v. Hunt, 134 App. Div., 325, aff'd 201 N. Y., 599), is unconvicing and totally inapplicable to such facts as these.

Whatever the Supreme Court in the divorce action may have

done or may still do by virtue of the right to alter and amend the divorce decree with respect to children (secs. 1759 and 1760, Code of Civil Procedure), the fact remains that it has decided nothing whatever as to either the custody or support of this child. The rule is thus stated in Zilley v. Dunwiddie (98 Wis., 428, 432):

" When the marriage is dissolved by divorce, the duty of parents to maintain their children remains as before, for children are not parties to the divorce suit and do not lose any rights thereby."

This was cited with approval in Hector v. Hector (51 Wash., 434, 438) as follows:

" * * * the obligation is the same after divorce as before unless the decree provides otherwise " (see also Bishop on Marriage, Divorce and Separation, Vol. II, sec. 1210, and cases cited.

Any such vicarious estoppel as defendant contends for would be repugnant both to law and justice. In White v. White (154 App. Div., 250, 254) the court said:

" It will not be presumed that the Legislature ever intended that the innocent children of a mariage should be deprived of their right to support and maintenance by the father simply because the mother, in conducting an action for divorce, was content to accept a judgment without provision for her own children's support."

Moreover, it may be quite fitting that the mother, guilty though she be, shall have custody of this infant. Thus in Ullman v. Ullman (151 App. Div., 419, 424) the court declared: " The mother may have been in fault and the father blameless, and yet the age or condition of the child may require a mother's care " (see also Earle v. Earle, 158 App. Div., 552, and Shields v. Reilly, 68 Conn., 256, 263). In the latter case the custody of the child was temporarily given to the guilty mother. The court said:

" The order was a temporary one merely and it deprived the defendant of none of his rights over the child except that of care and custody for a time, and he was at liberty at any time to move to have the order rescinded or modified if he could prove that the best interests of the child would be thereby subserved. The mother had no property, was not bound by law to support the child, and was unable by her earnings even to support herself; while the father was abundantly able to support it and the law made it his duty to support it."

In the case of Ukers v. Ukers (Supreme Ct., Special Term, Giegerich, J., N. Y. Law Journal, July 27, 1915) a decision of a city magistrate adjudging defendant a disorderly person and ordering him to pay $12 a week for the support of his child was reviewed on application for a certificate of reasonable doubt. It appears that the wife in 1910 obtained a judgment of divorce against defendant which awarded her the custody of the child and $20 a week for their joint support. Later defendant paid her a lump sum and took a general release. It was held on the authority of People v. Soriano (N. Y. Law Journal, Dec. 31, 1912, aff'd 157 App. Div., 892) that defendant was not exempted by the divorce decree from his common law duty to support the child, the court expressing doubt as to whether or not the inability of the mother to support the child should not be clearly shown. The court said:

" It may be conceded that it is the duty of a father to support his minor child, and that as between him and the *public,* his duty to keep the child from being a public charge, and as between him and the child his duty to support the child cannot be discharged by anything that takes place between him and the mother of the child, whether in the form of a judgment in a matrimonial action or in the form of an agreement between them."

It is true that both in the Ukers case and in the Soriano case the husband was at fault, but I am unable to see why the con-

sequences of the wife's misconduct should be visited upon the innocent child to the extent of absolving the father from his common-law duty of support when the mother is unable to furnish support, even though it may be her duty as between her and the husband.

Defendant also maintains that section 685 of the charter contemplates the actual existence of the marriage relation at the time of the abandonment proceedings, citing People, &c., v. Cullen (153 N. Y., 629, 635). That case, however, related to the support of the wife following a decree of separation, and not to children, and I am unable to see that it is in any way in point. It is true that the court refers to the statute as being highly penal and to be strictly construed, but for all that there appears nothing in the wording of the statute to justify any supposition that the Legislature intended to leave a condition where a child still legitimate had neither the rights of a bastard nor of a child born in lawful wedlock with the marriage relation still in existence. Abandonment and bastardy proceedings are doubtless designed to enable the State and its agencies to step in and compel support of both legitimate and bastard children.

I do not think even the literal meaning of the charter provision is in doubt, but even if it were, it is the spirit and purpose of a statute which is to be regarded in its interpretation, whether the statute be penal or not (see People ex rel. Lawton v. Snell, 168 App. Div., 410, 414, 415, where deficiencies in provisions of the Code of Criminal Procedure concerning bastardy proceedings were supplied).

It must also be borne in mind that the law of this State seeks in every way to provide means to enforce the obligation of a father to support his children (secs. 683 and 685 of the Greater N. Y. Charter; sec. 921, Code Crim. Pro.; secs. 480, 481 and 482, subd. 1, of the Penal Law).

The duty to support a child springs from the law of nature,

and a denial of support, with no fault of the child, is abhorrent, no matter what the sins of either parent may have been.

It seems well settled that the duty of support is a legal and not merely a moral one (Am. & Eng. Ency. Law, 2d ed., Vol. XXI, p. 1049; Cyc., vol. 29, p. 1606; Tiffany's Persons & Domestic Relations, 2d ed., p. 251, et seq.; Battershall on Domestic Relations in New York, 1910, p. 382; Furman v. Van Sise, 56 N. Y., 435, 439; De Brauwere v. De Brauwere, 203 N. Y., 460, 465).

In People ex rel. Demos v. Demos (115 App. Div., 410) the court said:

" The purpose of the statute is not to adjust matrimonial differences, but to furnish a means of relieving the city from the burden of supporting an abandoned wife and children and of placing such burden where it rightfully belongs."

Divorce jurisdiction in this State is statutory (Erkenbrach v. Erkenbrach, 96 N. Y., 456), and so long as the two sets of statutes coexist the jurisdiction of the Supreme Court certainly cannot be said to be exclusive, though its decisions would certainly prevail within the statutory limits established by the Legislature.

I am satisfied that the husband's action in refusing to recognize or provide for his child constitutes a legal abandonment, and that the child is likely to become a public charge.