LUTZ INDUSTRIES, INC., SUCCESSORS TO LUTZ HOSIERY MILL, INC. V. DIXIE HOME STORES, A CORPORATION, AND ROBERT A. GIBBONS AND HENRY M. SMITH, T/A GIBBONS & SMITH.

(Filed 30 June, 1955.)

**1. Pleadings § 30—**

When a motion to strike irrelevant matter from a pleading is made in apt time, it is made as a matter of right. G.S. 1-153.

**2. Pleadings § 31—**

The test of whether matter alleged in a pleading is irrelevant, and therefore should be stricken on motion aptly made, is whether the pleader would have the right to introduce in evidence the facts to which the allegations relate.

**3. Appeal and Error § 40f—**

The denial of a motion to strike allegations from a pleading, even though the motion be made in apt time, is not ground for reversal on appeal unless the record affirmatively shows that the matter is irrelevant or redundant, and that its retention in the pleading will cause harm or injustice to the moving party.

**4. Evidence § 2—**

The courts will take judicial notice of the Building Code published by the Building Code Council, since such publication is an important public document having the force of law through enactment by reference. G.S. 143-136 to G.S. 143-143, inclusive.

**5. Statutes § 3—**

The North Carolina Building Code of 1936 was ratified and adopted by Chapter 280, Public Laws of 1941, by clear and specific reference, and therefore the Building Code and the National Electric Code to which it refers, have the force and effect of law.

**6. Same—**

Unless prohibited by Constitutional restrictions, the General Assembly may enact by reference standards of conduct promulgated and published by a public body or commission when such publication is clearly identified.

**7. Constitutional Law § 13—**

For the purpose of protecting life, health and property, the General Assembly has the power to enact by reference a specified building code promulgated and published by the Building Code Council.

**8. Negligence § 1—**

The violation of a statute which imposes upon a person a specific duty for the protection of others constitutes negligence *per se*, and is actionable when a proximate cause of injury.

**9. Electricity § 12: Pleadings § 31—**

Provisions of the 1936 Building Code which require that electrical systems be installed in conformity with the National Electric Code and the National Board of Fire Underwriters, contain regulations having the force of law, and therefore in an action to recover for destruction of property in a fire allegedly caused by negligence of defendants in failing to properly install electrical fixtures and wiring and in failing to have the electrical system inspected before turning on the electricity, evidence of violations of germane provisions of the National Electric Code, adopted as the standard by the Board of Fire Underwriters, would be competent, and therefore denial of motions to strike allegations of the complaint referring to such violations is not error.

**10. Statutes § 6—**

The presumption in favor of the validity of an act of the Legislature is a universal and fundamental rule.

**11. Appeal and Error § 40l—**

The courts will not determine the constitutionality of a statute unless the question is properly presented and it is found necessary to do so in order to protect rights guaranteed by the Constitution.

**12. Electricity § 12: Statutes § 3—**

Plaintiff pleaded the provisions of Chapter 280, Public Laws of 1941 granting the Building Code Council power to modify the Building Code, provided its modifications are approved by the Commissioner of Insurance and do not establish more stringent regulations than contained in the Code. *Held:* In the absence of a challenge to the constitutionality of the statute, the presumption of constitutionality will be indulged in an action to recover damages resulting from a fire allegedly caused by the negligent installation of equipment, and the provisions of the National Electric Code of 1951, promulgated by the North Carolina Building Code Council would be admissible in evidence and therefore motions to strike allegations in regard thereto are properly denied.

**13. Pleadings §§ 3c, 31—**

A municipal ordinance may be pleaded by its caption or the number of the section thereof and the caption, but allegations that "The National

Electric Code of 1951 . . . which has been adopted by" the municipality in question, is an insufficient pleading of the municipal ordinance, and such allegations are properly stricken on motion.

**14. Damages § 9—**

In an action where punitive damages may be awarded, evidence of the financial condition of defendant and its reputed wealth is competent, but when only compensatory damages are recoverable, evidence thereof is incompetent, and allegations in regard thereto are properly stricken on motion.

**15. Damages § 7—**

Though no specific form of allegation is required as the basis for the award of punitive damages, the complaint must allege facts showing circumstances justifying the award, such as actual malice, or oppression, or gross and willful wrong, or wanton and reckless disregard of plaintiff's rights.

**16. Damages § 8—**

This action was instituted to recover damages suffered in a fire allegedly caused by improper installation of electrical equipment in violation of the standard prescribed by law. *Held:* The action was not to recover for any willful or malicious conduct on the part of defendants, and therefore the allegations are insufficient to support an award of punitive damages.

**17. Damages § 9: Pleadings § 31—**

The allegations of the complaint in this action being insufficient to support an award of punitive damages, allegations as to the pecuniary worth of defendants are irrelevant and should have been stricken upon motion aptly made.

**18. Appeal and Error § 40b—**

In the absence of a showing to the contrary, it will be presumed that the denial by the trial court of defendants' motion that plaintiff be required to make the allegations of the complaint more definite and certain, was denied in the court's discretion, and such discretionary denial of the motion is not reviewable on appeal in the absence of abuse of discretion.

APPEAL by defendants from *McSwain, Special Judge,* November Term 1954 of CALDWELL.

Civil action to recover compensatory and punitive damages for the destruction by fire on 12 February 1952 of yarn, manufactured hosiery and hosiery machinery allegedly caused by the negligent wiring and installation of electrical fixtures, and by the negligent failure to have the wiring and fixtures inspected and approved before turning on electrical current.

Prior to answer or demurrer, or before an extension of time to plead is granted, each defendant made separate motions to strike and to make more definite certain parts of the complaint.

The language of the two motions is identical, except that the defendants Gibbons and Smith, a partnership trading under the name of Gibbons & Smith, moved to strike a few more allegations than their co-defendant did. The Trial Court entered separate orders denying the separate motions *in toto*.

From the orders entered, each of the defendants appealed, assigning error.

*W. H. Strickland and Alfred R. Crisp for Plaintiff, Appellee.*

*Adams & Adams and Mull, Patton & Craven for Defendant, Appellant Dixie Home Stores.*

*Townsend & Todd for Defendant, Appellant Gibbons & Smith.*

PARKER, J.  The defendants Gibbons and Smith state in their brief that both appellants present the same questions for determination, and therefore they adopt *in toto* the brief filed by their co-defendant, the Dixie Home Stores, and abandon any of their assignments of error, which are not carried forward and discussed in the brief of their co-defendant. The Dixie Home Stores has not carried forward and discussed in its brief the denial of the court to strike any allegations, except those contained in its own motion. Therefore, we are concerned with identical motions to strike and to make more definite certain parts of the Complaint.

The defendants having made their motions to strike in apt time, G.S. 1-153, it is made as a matter of right. *Daniel v. Gardner*, 240 N.C. 249, 81 S.E. 2d 660; *Brown v. Hall*, 226 N.C. 732, 40 S.E. 2d 412. Upon motion irrelevant allegations in a pleading should be stricken. The test is, does the pleader have a right to introduce in evidence the facts to which the allegation relates? If so, the motion should be denied: if not, it should be allowed. *Daniel v. Gardner, supra; Penny v. Stone*, 228 N.C. 295, 45 S.E. 2d 362. The denial of a motion to strike made in apt time "is not ground for reversal unless the record affirmatively reveals these two things: (1) That the matter is irrelevant or redundant; and (2) that its retention in the pleading will cause harm or injustice to the moving party." *Hinson v. Britt*, 232 N.C. 379, 61 S.E. 2d 185.

Assignments of error Nos. 3, 4, 6 and 8 of the Dixie Home Stores, and assignments of error Nos. 5, 6, 9 and 12 of Gibbons & Smith refer to the same allegations of the Complaint, which allegations in substance state that the defendants in making certain electrical installations violated the provisions of the National Electrical Code of 1951, the standard adopted by the National Board of Fire Underwriters, which violation proximately caused a fire destroying the property described in the

Complaint. These allegations are contained in Paragraphs 7, 8, 13 and 14 of the Complaint.

The relevant part of Paragraph 7 follows—the words asked to be stricken are emphasized: "That the defendant corporation, through its agents, Gibbons and Smith, carelessly, wantonly and recklessly, *and strictly in violation of the National Electrical Code of 1951, which is the standard adopted by the National Board of Fire Underwriters for electrical wiring and electrical apparatus, and also which has been adopted by the City of Lenoir,* in the following, to-wit: That in illegally installing its equipment *in violation of said code* the defendant corporation *violated said code* in the following particulars: (a) That in a group of 7 compressors that were fed by a feeder consisting of two No. 4 and one No. 6 wires, feeding a distance of about 100 feet from a 100 ampere to two fuse switches; that the supply was 120/240 volts, 60 cycle; that type R wire was used with a volt carrying capacity of 70 amperes, whereas *according to the electrical code* a feeder capacity of 82— 15/100 ampere capacity was required. (b) That three feeders from a junction box, the second feeder consisted of two No. 6, five No. 12 and one No. 8 wire in a one-inch conduit; *that this No. 1 size of wire exceeded the 40% fill allowed by Table 11, Chapter 10 of the Electrical Code above referred to;* that the third feeder consisted of two No. 6, two No. 12 and one No. 8 wires in a one-inch conduit; *that this exceeded the 40% fill allowed by Table 11, Chapter 10 of the Electrical Code, and that both of said items were in violation of said code.* (c) That the three feeders above mentioned fed 7 safety switches, one for each compressor. The safety switches connected with the two-inch conduit mentioned above and were used as a junction point with wires feeding through and in some cases splicing in the switches; *that this was in violation of Code Section 3737-b.* (d) *That the motor controllers used for the compressors were not according to the code, and therefore in violation of the National Electrical Code.* (e) That the 7 compressors were installed and wired *in violation of the Code,* in the following manner— (here follows a description of how each compressor was installed and wired). *All of these installations were in violation of Section 2405 of the National Electric Code, and particularly Table 28, Chapter 10, which requires two over current devices in each of the compressor units named."*

The relevant parts of Paragraph 8, with the words asked to be stricken emphasized, are: "That the defendants, Gibbons and Smith, agents of the defendant, Dixie Home Stores, a corporation, knew or should have known *the requirements of the National Electric Code hereinbefore referred to,* and that it was their duty to and they should have refrained from making an installation in connection with the use

of a dangerous instrumentality, to-wit: electricity, *contrary to the provisions of said code . . .*"

The relevant parts of Paragraph 13, with the words asked to be stricken emphasized, follow: "Dixie Home Stores knew or should have known that . . . electricity was highly dangerous in nature, and that in dealing with said instrumentality the defendant corporation and its agents knew or should have known that they *were required to install the wiring and electrical fixtures as hereinbefore alleged, in accordance with the National Electric Code of 1951.* That the defendant corporation, Dixie Home Stores, knew or should have known that before turning the electric current into said installations that they were required to have the said installations inspected by the city inspector of the City of Lenoir; that notwithstanding these facts the defendant corporation, Dixie Home Stores, unlawfully, wilfully, wantonly and in a grossly negligent manner installed said electrical wiring and electrical fixtures in the building belonging to O. P. Lutz Furniture Company, Inc., *in violation of the National Electrical Code* and its failure to have the same inspected as required by the ordinance of the City of Lenoir. Reference to which ordinance, Article 3, entitled 'Electrical Inspection' is hereby referred to and made a part hereof as fully as if incorporated herein, and a certified copy of said ordinance will be produced at the hearing of this action . . ."

All parts of Paragraph 14 reading as follows: "That by reason of the unlawful, wanton, wilful and gross negligent conduct of the defendant corporation and its agents and their failure to observe the rules and requirements of the National Electrical Code, and failure to observe the ordinance of the City of Lenoir, that this plaintiff is entitled to recover punitive damages of the defendant corporation in the amount of $50,000.00."

In support of their motions to strike, the defendants make two contentions. One, the allegations of the Complaint are not sufficient for us to determine that the City of Lenoir has enacted an ordinance adopting the National Electrical Code of 1951 and making it a part of the law of the city. Two, the National Electrical Code of 1951 sets up a private standard of care, which has no relevancy to the legal standard of reasonable care imposed upon all persons by law, and the retention of the allegations of the Complaint in respect thereto will be highly prejudicial to them in the trial. The defendants in their brief state: "We think the Town of Lenoir could have validly enacted an ordinance copying word for word the so-called National Electrical Code of 1951."

The briefs of the parties make no reference to the North Carolina Building Code—enacted by the General Assembly in 1933, and, as subsequently amended, set forth in G.S., Chapter 143, Article 9, Sec-

tions 143-136 to 143-143, both inclusive, which chapter is entitled "State Departments, Institutions, and Commissions." G.S. 143-137 states: "It is the purpose of this article to protect life, health and property and all its provisions shall be construed liberally to that end." G.S. 143-139 created a Building Code Council which was empowered and directed to draw up a building code for the State. In 1936 the Building Code Council adopted, promulgated and published a North Carolina Building Code. This Building Code is an important public document of which we take judicial notice. *Staton v. R. R.,* 144 N.C. 135, 56 S.E. 794; *Clark v. Greenville,* 221 N.C. 255, 20 S.E. 2d 56; 20 Am. Jur., Evidence, Sec. 44.

Chapter XV, entitled "Electrical Control" of the 1936 North Carolina Building Code, reads as follows:

"Except as may be otherwise provided by rules promulgated by the Building Code Council, the electrical systems of a building or structure shall be installed in conformity with the 'National Electrical Code,' as approved by the American Standards Association.

"The electric wiring of houses or buildings for lighting or for other purposes shall conform to the regulations prescribed by the organization known as National Board of Fire Underwriters.

"In order to protect the property of citizens from the dangers incident to defective electric wiring of buildings, it shall be unlawful for any firm or corporation to allow any electric current for the purpose of illuminating any building belonging to any person, firm, or corporation to be turned on without first having had an inspection made of the wiring by the building inspector and having received from the inspector a certificate approving the wiring of such building. It shall be unlawful for any person, firm, or corporation engaged in the business of selling electricity to furnish any electric current for use for illuminating purposes in any building or buildings of any person, firm, or corporation, unless the said building or buildings have been first inspected by the inspector of buildings and a certificate given as above provided. The fee that shall be allowed said inspector of buildings for the work of such inspector of electrical wiring shall be one dollar for each building inspected, to be paid by the person applying for the inspection."

The General Assembly in 1941—P. L. 1941, Ch. 280—passed an Act amending the Building Code enacted in 1933 and restricting and defining the authority of the Building Code Council and providing for appeals therefrom. The relevant part of the amendment, which is set forth in G.S. 143-139, is as follows:

"Subject to the limitations hereinafter set forth, the said Building Code Council is authorized and empowered to establish reasonable and suitable classifications of buildings, both as to use and occupancy; to

determine general building restrictions as to location, height and floor areas; to promulgate rules for the lighting and ventilation of buildings; means of egress therefrom; construction thereof and precautions to be taken during such construction; materials, loads and stresses of construction; chimneys and heating appliances and elevators; plumbing, heating, electrical control and protection; and to adopt such other rules and regulations as may be reasonably necessary to effectuate the purposes of this article: Provided, however, the said Building Code Council shall not establish any standard or adopt or promulgate any rule, regulation, classification, limitation or restriction more rigid, exacting or stringent in its requirements than is authorized in the 'North Carolina Building Code' adopted and promulgated by said Council in the year one thousand nine hundred and thirty-six and published in full in August of that year in a printed volume as an official publication of the North Carolina State College of Agriculture and Engineering of the University of North Carolina, the said volume being known and designated as the 'North Carolina Building Code, prepared by the North Carolina Building Code Council' and also known and identified as 'Bulletin Number Ten, Engineering Experiment Station, State College Station, Raleigh.' *The provisions of said 'North Carolina Building Code' so published are hereby in all respects ratified and adopted and shall continue in full force and effect unless and until they may be modified as hereinafter authorized:* Provided, further, the said Building Code Council may, subject to the approval of the Insurance Commissioner, promulgate rules and regulations which shall have the effect of establishing requirements less rigid and less stringent than those set forth in said 'North Carolina Building Code.' "  (Emphasis added).

In 1945 the 1936 North Carolina Building Code was reprinted and reissued by the North Carolina Insurance Department.

The next issue of the North Carolina Building Code by the State Department of Insurance was in 1953. Article XVI of this 1953 Code entitled, "Electrical Installations," is an exact copy of Chapter XV of the North Carolina Building Code of 1936, except that the 1953 Code adds to the first paragraph of Chapter XV of the 1936 Code the words "and as filed in the office of Secretary of State," and except that the last sentence in the third paragraph of Chapter XV of the 1936 Code is omitted.

In 1905 the General Assembly enacted Chapter 506 of the Public Laws 1905, which chapter is entitled "An Act to Amend Chapter 677 of the Public Laws of 1901 to Prevent Fire Waste." Section 23 of the 1905 Act, now G.S. 160-141, reads in part: "The electric wiring of houses or buildings for lighting or for other purposes shall conform to

the regulations prescribed by the organization known as National Board of Fire Underwriters."

The North Carolina Building Code was adopted, promulgated and published in 1936. The Act of the 1941 session of the General Assembly, Ch. 280, amending the 1933 Act, provides "the provisions of said 'North Carolina Building Code' so published are hereby in all respects ratified and adopted and shall continue in full force and effect unless and until they may be modified as hereinafter authorized." The 1941 Act ratified and adopted the North Carolina Building Code published in 1936 by clear and specific reference.

Unless prohibited by constitutional restrictions, reference statutes are frequently recognized as an approved method of legislation to avoid encumbering the statute books by unnecessary repetition. 50 Am. Jur., Statutes, Sec. 36; 19 N.C. Law Review, pp. 457-458. See also *Range Co. v. Carver*, 118 N.C. 328, 24 S.E. 352. In *Scottish Union & Nat..Ins. Co. v. Phoenix Title & Trust Co.*, 28 Ariz. 22, 235 P. 137, it was held that an Act which merely required the "use of the form known as the New York Standard" established a statutory form for a fire insurance policy. See also *Engel v. Davenport*, 271 U.S. 33, 70 L. Ed. 813; *Jones v. First Nat. Bldg. Corp.*, 155 F. 2d 815.

G.S. 4-1 provides that "all such parts of the common law as were heretofore in force and use within this State, or so much of the common law as is not destructive of, or repugnant to, or inconsistent with, the freedom and independence of this State and the form of government therein established, and which has not been otherwise provided for in whole or in part, not abrogated, repealed or become obsolete, are hereby declared to be in full force within this State." A clear example of a reference statute. If this reference statute is not valid, a large body of our laws, many of which have been enforced since the statute of 1778, and earlier, will be eviscerated. See *Central of Georgia R. R. Co. v. State*, 104 Ga. 831, 31 S.E. 531, 42 L.R.A. 518.

In respect to the ratification and adoption by the 1941 Act of the North Carolina Building Code published in 1936, it is said in 19 N.C. Law Review, p. 458, "Here the reference is to non-statutory material; but as long as it is quite clearly identified, as in this case, no reason appears for doubting the validity of the enactment."

The General Assembly can prescribe standards of conduct which have the force and effect of law. *Motsinger v. Perryman*, 218 N.C. 15, 9 S.E. 2d 511. The General Assembly by its 1941 Act specifically set the standard of care in respect to the installing of the electrical system of a building and the electric wiring of buildings for lighting or for other purposes, and that is that the electrical system of a building shall be installed in conformity with the "National Electrical Code" as ap-

proved by the American Standards Association and the electric wiring of buildings for lighting or for other purposes shall conform to the regulations prescribed by the organization known as National Board of Fire Underwriters, all as set forth in the Building Code of 1936; and also provided in said code as to inspection and approval of electric wiring before the turning on of electric current. The legislative purpose was "to protect life, health and property." G.S. 143-137. It is well settled law in this jurisdiction, that when a statute imposes upon a person a specific duty for the protection of others, that a violation of such statute is negligence *per se.* Of course, to make out a case of actionable negligence the additional essential element of proximate cause is required. *Morgan v. Coach Co.,* 225 N.C. 668, 36 S.E. 2d 263; *Wooten v. Power Co.,* 201 N.C. 560, 160 S.E. 758; *Stone v. Texas Co.,* 180 N.C. 546, 105 S.E. 425; 12 A.L.R. 1207; *Leathers v. Tobacco Co.,* 144 N.C. 330, 57 S.E. 11, 9 L.R.A. (NS) 349; 38 Am. Jur., Negligence, Sec. 158.

The Building Code published in 1936 by virtue of the Act of 1941 contains regulations having the force of law. The cases of *Dechert v. Municipal Electric Light Co.* (1899), 39 App. Div. 490, 57 N.Y.S. 225; *Grant v. Libby, McNeill & Libby* (1931), 160 Wash. 138, 295 P. 139, and *Mississippi Power & Light Co. v. Whitescarver,* 68 F. 2d 928, cited and relied on by the defendants, deal with the admissibility of safety codes by governmental department or commission, or promulgated by voluntary associations, or codes not having the force of law. In the *Mississippi Power & Light Co. Case* it was conceded that the National Electric Safety Code issued by the U. S. Department of Commerce, Bureau of Standards, had no compulsive force, because "no law required it." These cases are not in point. The annotation in 122 A.L.R. 644 deals generally with these type cases.

In 1954 Cumulative Supplement to 20 Am. Jur., Evidence, p. 111, it is written: "With the apparent exception of one jurisdiction, (Alabama), safety codes which have been issued by governmental departments or commissions, or promulgated by voluntary associations for their informative value and not as regulations having the force of law, are not admissible to prove the truth of the statements therein contained."

In 122 A.L.R. Annotation at p. 646 it is said: "That the general rule against admission in evidence, in negligence actions, of safety codes or rules is restricted to codes or rules not having the force of law is shown by decisions in various cases involving safety rules enforceable as laws." By way of illustration, this annotation calls attention to *Lehigh Valley R. Co. v. Russia,* 21 F. 2d 406; *Porter Screen Mfg. Co. v. Central Vermont R. Co.,* 92 Vt. 1, 102 A. 44; *Brumhall v. Sutherland,* 110 Cal.

App. 10, 293 P. 672; *Weimer v. Westmoreland Water Co.*, 127 Pa. Super. Ct. 201, 193 A. 665.

The National Electrical Code referred to in the North Carolina Building Code published in 1936, by virtue of the Act of 1941, has the force and effect of law, and the parts of it relevant and material in this action are admissible as evidence in this case. *Mazzu v. Darojo Realty Co.*, 13 N.Y.S. 2d 612, 257 App. Div. 1036, appeal denied 24 N.E. 2d 28, 281 N.Y. 887; *Beauvais v. Springfield Institute for Savings*, 303 Mass. 136, 20 N.E. 2d 957, 124 A.L.R. 611; 65 C.J.S., Negligence, p. 420; 122 A.L.R. Anno. p. 646. See also *McAllister v. Pryor*, 187 N.C. 832, 123 S.E. 92; *Savage v. Kinston*, 238 N.C. 551, 78 S.E. 2d 318.

In *State v. Crawford*, 104 Kan. 141, 177 P. 360, 2 A.L.R. 880, the provision in Section 5 of the Fire Prevention Act, Section 4863 of the General Statutes of Kansas 1915, requiring that "all electric wiring shall be in accordance with the national electrical code" was held void for uncertainty and unconstitutional as an attempt to delegate the legislative power of the State. In our opinion the *Kansas Case* is distinguishable from the instant case, because our General Assembly in the 1941 Act "in all respects adopted and ratified" the National Electrical Code referred to in the North Carolina Building Code issued in 1936.

The 1941 Act continued the Building Code Council, and gave to it certain powers to modify the code, with the approval of the Commissioner of Insurance, but such changes must not establish more stringent regulations than those already incorporated in the Code. By virtue of the 1941 Act the Building Code Council issued the 1953 Edition of the North Carolina Building Code, providing in Article XVI that electrical installations and wirings shall conform to the National Electrical Code.

In this State and in this Nation it is the universal and fundamental rule that there is a presumption in favor of a legislative enactment. *Turner v. Reidsville*, 224 N.C. 42, 29 S.E. 2d 211; *Maxwell v. Kent-Coffey Mfg. Co.*, 204 N.C. 365, 168 S.E. 397, 90 A.L.R. 476; *Alaska Packers Association v. Industrial Acci. Com.*, 294 U.S. 532, 79 L. Ed. 1044; 11 Am. Jur., Constitutional Law, Sec. 128, where the countless cases are cited. It is not in accord with the practice of the courts to declare void an act of the Legislature, or any part thereof, unless the question is presently presented, and it is found necessary to do so in order to protect rights guaranteed by the Constitution. *Hyde County v. Bridgman*, 238 N.C. 247, 77 S.E. 2d 628; *Horner v. Chamber of Commerce of City of Burlington*, 231 N.C. 440, 57 S.E. 2d 789; *Turner v. Reidsville, supra; Chemical Co. v. Turner*, 190 N.C. 471, 130 S.E. 154; *Person v. Doughton*, 186 N.C. 723, 120 S.E. 481; *Liverpool, etc. Steamship Co. v. Comrs. of Emigration*, 113 U.S. 33, 28 L. Ed. 899, p. 901.

The constitutionality of the 1941 Act granting to the Building Code Council power to modify in the future the Building Code, is not challenged. Therefore, indulging in the presumption of its constitutionality, it is our opinion that the material and relevant parts of the National Electrical Code of 1951 promulgated as rules and regulations by the North Carolina Building Code Council is admissible in evidence, provided it has been approved by the Commissioner of Insurance, and provided "it does not establish any standard or adopt or promulgate any rule, regulation, classification, limitation or restriction more rigid, exacting or stringent in its requirements than is authorized in the North Carolina Building Code" adopted by the Building Code Council in 1936, and published that year.

The defendants in their assignments of error Nos. 3 and 5 except to the failure of the trial court to strike out of Paragraph 7 of the Complaint the words "and also which has been adopted by the City of Lenoir," which has reference to the National Electrical Code of 1951. In G.S. 160-272 it is written: "In all judicial proceedings it shall be sufficient to plead any ordinance of any city by caption, or by number of the section thereof and the caption, and it shall not be necessary to plead the entire ordinance or section." The Complaint in subsequent paragraphs alleges a city ordinance Article 3 entitled "Electrical Inspection." The allegations in Paragraph 7 totally fail to plead any ordinance of the City of Lenoir making the National Electrical Code of 1951 a part of its municipal law. 41 Am. Jur., Pleading, p. 296. To permit the retention of these words in the Complaint, in our opinion, will cause harm or injustice to the defendants, and the lower court erred in failing to strike them out.

The defendants' assignments of error as to the failure of the lower court to strike out the other parts of Paragraph 7, and the parts of Paragraphs 8 and 13 of the Complaint referring to the National Electrical Code of 1951 are overruled.

The defendants' assignments of error as to the failure of the court to strike out all the allegations of Paragraph 14 of the Complaint will be dealt with later because of the additional allegations as to punitive damages.

The defendants assign as error the failure of the lower court to strike from Paragraph 2 of the Complaint the following words referring to the Dixie Home Stores, to-wit: "With a large chain of stores operating throughout North and South Carolina," and a failure to strike the word "chain" from the following words later on in the same paragraph: "and that the defendant corporation did, on the day hereinafter alleged and does now, operate one of its chain grocery stores in the City of Lenoir . . ." The defendants also assign as error the failure of the lower

court to strike all of Paragraph 15 of the Complaint, which refers to the Dixie Home Stores, and is as follows: "That the defendant corporation, as the plaintiff is advised and believes, is a large, prosperous and wealthy corporation, embracing many stores throughout the South, and the plaintiff is advised and believes, and therefore, alleges, is worth more than the sum of one million dollars." The above assignments of error consist of the Dixie Home Stores' assignments of error Nos. 1, 2 and 9, and of Gibbons' and Smith's assignments of error Nos. 1, 2 and 13.

*Taylor v. Bakery,* 234 N.C. 660, 68 S.E. 2d 313, was an action to recover both compensatory and punitive damages for slander. The defendant moved to strike the italicized portion of Paragraph 15 of the Complaint reading as follows: "That the defendant is a corporation of large means *and is reputed to be worth a large sum of money and physical properties.*" The Court said: "The exception to the failure of the court to grant the defendant's motion to strike from the plaintiff's complaint the allegation with respect to the reputed wealth of the defendant, will not be upheld. In an action where punitive damages may be awarded, evidence of the financial condition of the defendant, or of its reputed wealth, is admissible in behalf of the plaintiff."

This Court also said in *Roth v. News Co.,* 217 N.C. 13, 6 S.E. 2d 882: "When the allegations of the complaint are sufficient to support a demand for punitive damages, and there is testimony tending to support the allegations, evidence of the pecuniary circumstances and wealth of the defendant is competent on the issue thereby raised."

While it seems that punitive damages need not be specifically pleaded by that name in the complaint, it is necessary that the facts justifying a recovery of such damages be pleaded. 25 C.J.S., p. 758. Though no specific form of allegation is required, the complaint must allege facts showing the aggravating circumstances which would justify the award, for instance, actual malice, or oppression or gross and wilful wrong, or a wanton and reckless disregard of plaintiff's rights. *Swinton v. Savoy Realty Co.,* 236 N.C. 723, 73 S.E. 2d 785; *Harris v. Coach Co.,* 220 N.C. 67, 16 S.E. 2d 464; *Roth v. News Co., supra; Baker v. Winslow,* 184 N.C. 1, 113 S.E. 570; *Hall v. Hall,* 179 N.C. 571, 103 S.E. 136; *Fields v. Bynum,* 156 N.C. 413, 72 S.E. 449. Evidence of a defendant's wealth is ordinarily inadmissible in all cases where compensatory damages alone are recoverable. *Sawyer v. Weskett,* 201 N.C. 500, 160 S.E. 575; *Mintz v. R. R.,* 233 N.C. 607, p. 610, 65 S.E. 2d 120; 15 Am. Jur., Damages, Sec. 345; 20 Am. Jur., Evidence, Sec. 259. This is based upon the fundamental principle that in a court of justice neither the wealth of one party or the poverty of the other should be permitted to affect the administration of the law.

Where punitive damages may be awarded, evidence of the defendant's pecuniary condition is competent, and there is strong argument that allegations as to such condition constitute a pleading of evidence.

In our opinion, after a careful study of the complaint, the allegations of fact therein contained are insufficient to support an award for punitive damages. This action, according to the allegations of fact in the Complaint, is to recover for damages arising from the defendants' negligent default and omission and not from any wilful or malicious conduct on their part. The allegations as to the pecuniary worth of the Dixie Home Stores are incompetent on the issue of compensatory damages, and are calculated to mislead the jury and to augment the recovery, if one is had. As the case goes back for trial, a discussion and analysis of these allegations would serve no useful purpose. The assignments of error of the Dixie Home Stores Nos. 1, 2 and 9, and of Gibbons and Smith Nos. 1, 2 and 13 are sustained.

We now come back to the defendants' assignments of error to the failure of the lower court to strike out all of Paragraph 14 of the Complaint. As, in our opinion, the allegations of fact in the Complaint are not sufficient to support an award of punitive damages, we think all of this paragraph, which merely states conclusions, not facts, and a vague reference to an ordinance of the City of Lenoir, should be stricken, and these assignments of error are sustained.

The defendants assign as error the failure of the lower court to make a part of the allegations of Paragraph 11 and of Paragraph 13 of the Complaint more definite. There being no indication to the contrary, we presume that the Trial Judge denied the motion to make the pleading more definite in his discretion, and such discretionary denial of the motion is not reviewable on appeal, in the absence of evidence of abuse of discretion. No abuse of discretion appears. *Lowman v. Asheville,* 229 N.C. 247, 49 S.E. 2d 408.

The Dixie Home Stores states in its brief that it abandons its assignments of error Nos. 5 and 6. Gibbons and Smith by reason of the statement in their brief adopting the brief of their co-defendant have abandoned their assignments of error Nos. 3, 4, 7, 8, 10, 11 and 14.

The National Electrical Codes of 1935, 1940 and 1951 consist of over 300 pages for each year. The plaintiff shall be required by the Superior Court to amend its complaint, and to specifically plead the parts of the National Electrical Code upon which it relies and the year of the Code.

The orders entered, in accordance with this opinion, will be

Modified and Affirmed.