ELIZA HILL, as Administratrix, etc., of EDWARD O'DONNELL, Deceased, Respondent, *v.* ERIE RAILROAD COMPANY, Appellant.

Fourth Department, December 18, 1928.

*John W. Ryan*, for the appellant.

*William J. Flynn*, for the respondent.

SEARS, J.   On the evening of the 22d day of August, 1926, the plaintiff's intestate, a boy fifteen years of age, was shot and killed by an employee of the defendant who was at the time performing the duties of a railroad detective and police officer.   The plaintiff's intestate when shot was in the defendant's freight yard near certain freight cars, and the duties of the employee who shot the plaintiff's intestate included the protection of the cars and their contents and the removal of trespassers from defendant's property, and other police duties.   The complaint charges that the shooting was wholly unprovoked, unjustified and unwarranted, and caused without fault on the part of plaintiff's intestate.   The evidence was sufficient to justify a verdict in favor of the plaintiff and we should now affirm the judgment were it not for an error in the reception of evidence which we consider material.

The plaintiff swore as a witness to prove the circumstances surrounding the shooting a boy named Connors who had been with the plaintiff's intestate just before the shooting.   They had been running away from a man who was pursuing them.   To get away from their pursuer they ran into the defendant's freight yard and placed themselves under the couplers at the opposite ends of a freight car.   This was the position of the witness when he says he heard the defendant's detective cry, " Hands up." Thereupon there was a cry, " Help, murder," and then the sound of a shot.   On cross-examination the defendant was able to show that this witness when called on a previous trial had testified merely that he heard the cry, " Help, murder," in a voice which was not the voice of the deceased, and that he did not testify as to hearing the command, " Hands up."   In this condition of the record the plaintiff over the objection and exception of the defendant was permitted to show that in a statement made by this witness twelve days after the shooting his account of the affair included a

statement that he heard some one " holler ' hands up.' " The admission of this earlier statement was error. The rule laid down in *Robb* v. *Hackley* (23 Wend. 50) has been consistently recognized in this State. (*People* v. *Katz*, 209 N. Y. 311; *Matter of Hesdra*, 119 id. 615; *Ferris* v. *Sterling*, 214 id. 249; *Dechert* v. *Municipal Elec. L. Co.*, 39 App. Div. 490; *Jenkins* v. *City of Hudson*, 40 Hun, 424; 2 Wigm. Ev. § 1126.) As a general and almost universal rule what a witness has said out of court cannot be received to fortify his testimony, but if an attempt is made to discredit a witness on the ground that his testimony is given under the influence of some motive prompting him to make a false or colored statement, the party calling him is permitted to show in reply that the witness made similar declarations at a time when the imputed motive did not exist. The present case falls within the general rule and not within the exception. There is no attack upon the witness' testimony as given under any inducement or motive occurring after the date of his first statement twelve days after the shooting. So far as appears the same impelling force was acting upon the mind of this witness from the time of the shooting. The partially conflicting account given at the first trial was offered as an impeachment, to show that his statement on the stand at the present trial was not worthy of belief. The defendant's counsel nowhere claimed that it was a recent fabrication. The offer of the early statement was plainly an attempt to fortify the witness' testimony given at this trial and rehabilitate the witness, and for such purpose the statement was inadmissible.

Because of the receipt of this evidence, the judgment must be reversed and a new trial granted.

Another exception is strongly urged upon us as constituting reversible error. The defendant offered in evidence as bearing upon the damages sustained by the mother of deceased, two records of the City Court of Buffalo acting as a Children's Court, adjudging the plaintiff's intestate to have been guilty of juvenile delinquency for committing acts which in the case of an adult would amount to the crimes of burglary and larceny. These records were excluded and exception taken. In this class of cases where the verdict of the jury is an estimate based upon expectations as to the future health, length of life, family relations and probable savings of decedent, great latitude should be allowed in the presentation of evidence that may aid the jury in the determination of any of these questions. (*McIlwaine* v. *Metropolitan St. R. Co.*, 74 App. Div. 496; *Fearon* v. *N. Y. Life Ins. Co.*, 162 id. 560; *Sternfels* v. *Metropolitan St. R. Co.*, 73 id. 494.) However, even the proof of a conviction of an adult does not in a civil case establish the

truth of the facts upon which the conviction is founded. (*Wilson* v. *Manhattan R. Co.*, 2 Misc. 127; affd., 144 N. Y. 632, on the opinion below.) It seems clear, therefore, that the effect of the adjudications for juvenile delinquency if received in evidence would have borne merely on the deceased's general standing in the community. The Children's Court Act (Laws of 1922, chap. 547) contains these provisions: "This act shall be construed to the end that the care, custody and discipline of the children brought before the court shall approximate as nearly as possible that which they should receive from their parents, and that as far as practicable they shall be treated not as criminals but as children in need of aid, encouragement and guidance." (§ 26.) "No adjudication under the provisions of this act shall operate as a disqualification of any child subsequently to hold public office or as a forfeiture of any right or privilege or to receive any license granted by public authority; and no child shall be denominated a criminal by reason of such adjudication, nor shall such adjudication be denominated a conviction. Neither the fact that a child has been before the Children's Court for hearing, nor any confession, admission or statement made by him to the court or to any officer thereof while he is under the age of sixteen years, shall ever be admissible as evidence against him or his interests in any other court." (§ 45, as amd. by Laws of 1924, chap. 436.)

While these sections do not expressly preclude the admission of the record of a judgment of juvenile delinquency in such a case as this, they do show that the policy of the State is to treat such matters with mildness and to protect children from disabilities resulting from such adjudications. Under these circumstances we are of the opinion that such an adjudication should be treated in the same way that parental chastisement would be treated and as having such slight bearing upon the general position and character of the child as to be negligible. We do not mean to intimate that it is not open to the defendant in such a case as this to show the habits and character of the child. We simply hold that the adjudications have not sufficient probative force to constitute legal evidence in this respect.

We base our reversal solely upon the earlier ground stated.

The judgment should be reversed on the law and a new trial granted, with costs to the appellant to abide the event.

All concur, except CROUCH, J., who dissents and votes for affirmance. Present — CLARK, SEARS, CROUCH, SAWYER and EDGCOMB, JJ.

Judgment reversed on the law and a new trial granted, with costs to the appellant to abide the event.