FRANK J. DOBRO, SR., as Administrator of the Estate of FRANK J. DOBRO, JR., Appellant, v VILLAGE OF SLOAN et al., Respondents.

Fourth Department, May 30, 1975

*Carl H. Dobozin* for appellant.

*Dixon, De Marie & Szymoniak (Joseph De Marie* of counsel), for Village of Sloan, respondent.

*Hodgson, Russ, Andrews, Woods & Goodyear (Grover James* of counsel), for Norfolk and Western Railway and another, respondents.

*Cosgrove & O'Connor (John J. Flynn* of counsel), for Town Ambulance Service, respondent.

DEL VECCHIO, J. In this action to recover damages resulting from the death of plaintiff's 18-year-old son, errors in the admission of evidence and in the refusal of requested instructions to the jury require a new trial as to the defendants Fumerelle and Norfolk and Western Railway Company. We do not disturb the dismissals at the close of the evidence of the claims against defendants Village of Sloan and Town Ambulance Service.

There was proof received at the trial that immediately prior to April 7, 1970 tires had been removed and stolen from vehicles located in a storage area maintained by Norfolk and Western Railway in the Village of Sloan, New York. About 8:30 P.M. on the date mentioned defendant Fumerelle, a policeman employed by the railroad, observed decedent in the storage lot. After arresting the youth and while running to apprehend him after he had broken away, the police officer stumbled and fell and the gun in his hand discharged. Unbe-

known to the officer, a bullet struck and wounded decedent who nevertheless entered an automobile and drove it into the gate of the fence surrounding the lot. Fumerelle, seeing the youth in the damaged vehicle and responding to his request for help, summoned medical assistance. Members of the village police force arrived, followed quickly by an ambulance from Town Ambulance Service in which decedent was transported to a hospital on the direction of one of the railroad policemen. He died shortly after his arrival at the hospital. It was also established that a stakeout of the storage area for the night in question had been arranged by the railroad and village police and that, although no tires had been observed off vehicles in the lot shortly before the time decedent was discovered, a group of tires removed from autos in the lot was found near the location where he had first been seen soon after the events just related. There was also proof, offered by plaintiff, that there was a hospital nearer to the railroad yard by five to 10 minutes than the one to which the youth was taken.

Plaintiff sought recovery against the railroad and its employee on the grounds that the circumstances of the shooting reflected a breach of duty owed to the decedent while on the premises of the railroad, that the railroad had permitted its employee to be armed without proper training and that the dispatch of decedent to the farther hospital was an act of negligence which was a proximate cause of his death. On the latter claim plaintiff also sought recovery against the Village of Sloan and Town Ambulance Service.

After plaintiff's case had been completed, defendants Fumerelle and Norfolk called plaintiff, father of the decedent, and questioned him in detail as to his knowledge of his son's participation in February, 1967 in a theft of merchandise from boxcars of the Lehigh Valley Railroad. The witness gave equivocating responses which indicated that the merchandise had been picked up on the railroad tracks, that police had been involved and that he, of his own knowledge, did not know that it had been stolen. He was then asked whether on June 6, 1969 his son stole a car from the Ford Agency in Orchard Park, took it to a motel and proceeded to strip the tires from the car. In response to that question and others incidental to it evidence was adduced before the jury that decedent on the occasion in question had been stopped in Orchard Park and had been fined $50 and put on six months' probation, although the witness denied that his son had stolen

the car. Then followed a question whether in 1966 decedent had robbed a boy by using a knife; the witness disclaimed any knowledge of that incident.

Defendants next called a police lieutenant employed by the Lehigh Valley Railroad who testified in detail as to his discovery of a break-in of railroad cars in February, 1967 and decedent's admissions of the commission by him of two separate thefts from the boxcars.

All of the foregoing testimony was received over objection by plaintiff, who also moved for a mistrial during the extensive questioning of the Lehigh Valley Railroad employee by reason of the material thus placed before the jury.

In the absence of the jury and in a discussion by counsel it was indicated that the boxcar incident had been made a part of a juvenile delinquency proceeding which was ultimately dismissed, that decedent had pleaded guilty to a criminal trespass charge in Orchard Park and been fined and put on probation and that there had been a youthful offender proceeding against him involving three traffic violations. (It may be that the criminal trespass count was also included in the youthful offender proceeding, but the record is not clear on this point.)

We believe that the foregoing evidence, tending to establish criminal conduct by the decedent at times prior to April 7, 1970, was improperly received on the issue of damages, and that its receipt may very well have been prejudicial to the plaintiff in this case.

Under the wrongful death statute of New York damages recoverable are limited to the pecuniary loss sustained by the designated survivors (EPTL 5-4.3). In arriving at this item "generally the basis for the allowance of damages has to be found in proof of the character, qualities, capacity and condition of the deceased, and in the age, sex, circumstances and condition of the next of kin" (*Lockwood v New York, Lake Erie & Western R.R. Co.,* 98 NY 523, 526). In principle, however, and to carry out the purpose of the precept, proof of this nature should be admissible only if it bears reasonably upon earning capacity of the decedent in the event his life had not been prematurely terminated or upon his disposition to support those dependent on him.

The question of the admissibility of proof of specific acts of criminal conduct by the decedent under the foregoing standards appears not yet to have been resolved in this jurisdic-

tion.[1] In other States, although not without exception, the preponderant view rejects such proof as not sufficiently relevant to the determination of damages or as excessively prejudicial. (See cases collected in Ann. 99 ALR2d 972, 1005–1010, and supplements thereto.)[2] We agree with those characterizations and believe them particularly applicable in the case before us.

Decedent was only 15 years old at the time of the Lehigh Valley Railroad boxcar break-ins and the Orchard Park incident was but two years later, when he was still a juvenile. The value of the proof of those events, occurring at that stage in his life, in fixing decedent's future earnings or his disposition to contribute to the support of his dependents is problematical at best. Certainly, no conclusion as to diminution of damages in terms of dollars and cents could actually be drawn from such proof.

On the other hand, putting before the jury the extensive testimony adduced about the 1967 and 1969 occurrences may very well have prejudiced it against the plaintiff, particularly in view of defendant's proof of thefts from the railroad yard immediately prior to the night of the shooting and the obvious suggestion to the jury that decedent was himself involved in tire theft on the evening of his death. Whatever slight value the proof of prior criminal conduct might have had as bearing on financial loss—if indeed there was any such value—was more than outweighed by the prejudicial effect it may have had.

There were also errors in refusing to give to the jury charges offered by plaintiff from Pattern Jury Instructions relating to the burden of proof in a wrongful death action (PJI 1:61) and to the effect that the jury might consider the fact of employment of a witness by a party in determining whether his testimony was in any way influenced by the employment

1. In *Hill v Erie R.R. Co.* (225 App Div 19) the exclusion of juvenile delinquency adjudications was upheld by this Department. A contrary view, adopted by the Third Department in *Russell v Cirillo* (17 AD2d 1005) may be somewhat weakened by the fact that the same proof had come into the case from the decedent's school records, to which—as the Appellate Division pointed out—plaintiff's counsel expressly stated that he had no objection. These cases were concerned with admissibility of adjudications of juvenile delinquency, and neither addressed the problem now before us—whether proof of specific criminal acts is admissible.

2. An exception exists in the case of criminal acts related to the use of intoxicants, which are generally admitted as showing a habit of intoxication bearing on the deceased's prospects for securing or holding a job (99 ALR2d, at pp 992–993).

relationship (PJI 1:92). The right to the first charge in an action of this kind is well established *(Noseworthy v City of New York,* 298 NY 76); the second requested instruction was appropriate because three witnesses called by defendant railroad were employed by it at the time of trial.

Since, by reason of the evidence of criminal conduct improperly received and the foregoing refusals of requested instructions, a new trial is required; we do not consider other contentions asserted on this appeal with respect to the charge.

We find no error in the trial court's dismissals of the actions against the Village of Sloan and Town Ambulance Service. With respect to the village, there was no proof that its employees were involved in the shooting or exercised any control over decedent. As to the ambulance company, in the circumstances disclosed by this record, there was no way in which the jury, with reasonable certainty, could have concluded that decedent's death would have been averted if the ambulance driver had disregarded the instructions given to him and taken the youth to the nearer hospital. With a difference of no more than 10 minutes at most in driving time between the two institutions, and with proof that in that period the hospital to which decedent was transported had been alerted and was thus able to be prepared to attend him immediately on arrival, any conclusion that the additional travel time was a proximate cause of death would have been sheer speculation.

The judgment, insofar as it dismisses the complaint against defendants Fumerelle and Norfolk and Western Railway Company, should be reversed and a new trial granted and otherwise the judgment should be affirmed.

CARDAMONE, J. P., SIMONS, MAHONEY and GOLDMAN, JJ., concur.

Judgment, insofar as it dismisses the complaint against defendants Fumerelle and Norfolk and Western Railway Company, unanimously reversed on the law and a new trial granted, with costs to abide the event, and otherwise judgment affirmed without costs.